Amy **MORLOCK,** Plaintiff,

v.

**WEST CENTRAL EDUCATION DISTRICT, et al.,** Defendants.

No. CIV. 6–96–271.

United States District Court, D. Minnesota, Sixth Division.

March 29, 1999.

Richard T. Wylie, Law Office, Dee Rowe, Krebsbach & Haik, Minneapolis, for plaintiff.

James P. Peters and Michael T. Milligan, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for the School District and Jerome Beddow defendants.

Ehrich L. Koch and Sheila A. Bjorklund, Lommen, Nelson, Cole & Stageberg, Minneapolis, for defendant Betsy Fish.

Paul C. Peterson and Sandra E. Brisley, Lind, Jensen & Sullivan, Minneapolis, for defendant James Molkenthin.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Plaintiff Amy Morlock brings this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), alleging that a teacher and several male students sexually harassed her while she was a student at the Melrose Area Learning Center ("MALC") in Melrose, Minnesota. She brings suit against the special education district in control.of the MALC, the West Central Education District ("WCED"), and the independent school districts that joined together to form the WCED, including Independent School District No. 745, Albany, MN ("ISD 745"); Independent School District No. 740, Melrose, MN ("ISD 740"); Independent School District No. 741, Paynesville, MN ("ISD 741"); and Independent School District No. 743, Sauk Centre, MN ("ISD 743") (collectively, the "ISDs"). She also brings claims against Jerome Beddow ("Beddow"), superintendent of the WCED, Betsy Fish ("Fish"), Coordinator of the MALC, and James Molkenthin ("Molkenthin"), teacher at the MALC, in both their official and individual capacities. In addition to her Title IX claims, plaintiff brings claims under 42 U.S.C. § 1983 alleging violations of her constitutional rights under the Equal Protection Clause of the Fourteenth Amendment and the Free Speech

and Petition Clauses of the First Amendment to the United States Constitution.[1] Plaintiff further alleges that defendants conspired to deprive her of her constitutional rights in violation of 42 U.S.C. §§ 1985 and 1986, and raises common law claims alleging negligent supervision, negligent retention, negligent failure to train, and negligent infliction of emotional distress. This matter is before the Court on defendants' motions for summary judgment dismissing all claims, and on plaintiff's motion to amend the complaint to add a count against the individual defendants under 42 U.S.C. § 1983 for violations of Title IX.

## BACKGROUND

### a. Relationships between the institutional parties

In 1988 the ISDs made an written agreement to form the WCED, an "education district," under Minnesota Statute § 122.91. Pursuant to the ISDs' agreement, as amended, the ISDs have certain rights allowing them to maintain control over the WCED. Each participating ISD has the right to appoint a representative from its own school board to serve on the WCED's governing board, and the right to recall its representative by a majority vote of the appointing school board. Superintendents from the participating ISDs also serve as ex officio members of the WCED board of directors. The agreement requires the WCED board to meet as needed to manage the affairs of the WCED "on behalf of" the participating members of the education district. The agreement further provides for the creation of a program advisory council for the purpose of increasing communications between the member ISDs. Membership on the council includes representatives from each of the separate programs the WCED operates, as well as the superintendents of each of the member schools. The agreement explicitly mandates that the council "provide the opportunity for input from the member school districts." The agreement additionally requires the WCED board to submit an annual report to the member districts about its activities. Furthermore, it requires the WCED to establish a revenue account for each member district to be credited with that district's share of the WCED's revenues, and assessed with each district's share of the costs of participation in the WCED. If the member districts decide to dissolve the WCED, all of its assets will be distributed back to the member ISDs on a proportionate basis.

Although the ISDs' agreement provides them with input into the WCED's operations, the WCED board has the power independently to enter into contracts, implement programs and services, and employ personnel. Furthermore, the WCED has its own identification number and receives federal and state funding both directly and through the ISDs.

The WCED created and governs the MALC, the facility where the events leading to the instant litigation occurred. The MALC is a cooperative alternative secondary school program designed for the purpose of meeting the educational needs of students who are unable to meet their educational needs in a mainstream setting. The school focuses on students who are chemically dependent, displaced homemakers, students with emotional behavioral disabilities, students who have already dropped out of school or have a history of expulsion or truancy, students with a low income, and students who are parents.

### b. Non-institutional parties and witnesses

Defendant Beddow at all times relevant to this dispute served as the WCED's su-

---

1. Plaintiff has withdrawn claims asserted in her complaint under 42 U.S.C. § 1983 for violations of her rights under the due process clauses of the Fifth and Fourteenth Amendments.

perintendent.[2] Defendant Fish acted as "coordinator" of the MALC, a position similar to that of a director or principal, and defendant Molkenthin was employed as a special education aide, a position that involved teaching duties. Several nonparty MALC employees were in a position to observe many of the events allegedly occurring at the school, including Kathy Klasen ("Klasen"), a technical tutor, and Becky Hiltner ("Hiltner"), the MALC secretary.

Plaintiff began attending the MALC at the age of nineteen in the fall of 1992. She attended the school on a regular basis until the fall of 1993 and then began coming to the school with less frequency. (Dep. of Amy Morlock at 19–22, 190.) The exact date of plaintiff's last visit to the MALC is unclear. Defendant asserts that she last attended in October 1993, while plaintiff states that she last attended the school sometime during the spring of 1994. (Dep. of Amy Morlock at 22.) Plaintiff asserts that she left the MALC because the environment there had become intolerable. She thereafter received a GED in the summer of 1996 from a technical school in Anoka, Minnesota.

### c. Plaintiff's teacher against student harassment allegations

Plaintiff alleges that while she attended the MALC defendant Molkenthin engaged in a pattern of unwelcome and offensive sexual conduct directed at her. She specifically asserts that on a daily basis he stared at her breasts, legs, buttocks and crotch. Defendants contend that Molkenthin suffers from ankylosing spondylitis, a form of arthritis that requires him to keep his head tilted downward and aligned with his spine. Plaintiff also alleges, however, that Molkenthin directed other conduct toward her that his condition does not explain. She states that he went out of his way to spend a lot of time with her and

that he frequently stood over her with his hand on her chair. She further states that he made numerous comments to her during her tenure at the MALC that were both offensive and sexual in nature. These comments include the following: telling her to tell her boyfriend that he was "lucky" and that "the guys are jealous;" telling her "guys your age always think about sex," and "you know what they're thinking about;" commenting with reference to male students harassing her at the school, "If I was their age, I'd hit on you, too;" telling her "You click better with older people;" stating with reference to another student, "Mike likes your butt;" in response to her comment that a short haircut made her look like a boy, stating "If you are a boy, you are the sexiest boy I've ever seen;" stating with reference to her child, "If a Jewish penis had gotten you pregnant you would have been welcomed with open arms;" and telling her, "It's hard to think of you as a student." Plaintiff further alleges that defendant Molkenthin touched her inappropriately on various occasions during her attendance at the school, including: placing his hand on her buttocks and inner thigh, putting his arms around her and touching her breast, rubbing and pushing his pelvis against her buttocks, and sitting next to her and placing his hand on her thigh. Moreover, plaintiff contends that Molkenthin persistently invited her to his house, stating that he wanted to photograph her and show her his photographs.

Plaintiff asserts that on several of these occasions she told Molkenthin she wanted his behavior to stop. She also asserts that she reported some of the incidents to Klasen and defendant Fish. She specifically states that she told defendant Fish about Molkenthin's repeated invitations to come to his home and said, "he does things and I don't want to be around him anymore." (Dep. of Amy Morlock at 303–04.) She

---

**2.** The WCED contracted with ISD 743 for the administrative services of defendant Beddow, who also served under a separate employment agreement with ISD 743 as its director of community education.

further states that she reported his comment about being "the sexiest boy I've ever seen" to Fish. (Dep. of Amy Morlock at 302). She asserts that Fish responded by telling her that if she was unhappy at the MALC she could go somewhere else. Plaintiff did not file a written grievance with the WCED about Molkenthin's behavior, nor did she communicate directly with defendant Beddow about it.

### d. Plaintiff's student against student harassment allegations

Plaintiff additionally alleges that while she was a student at the MALC some of the male students at the school engaged in a pervasive pattern of sexually harassing conduct directed towards her, other female students, and female staff. She asserts that various students exposed her to obscene language on an almost daily basis, and further states that some of the students made comments that were of a threatening and sexual nature, including: in-class discussions about rape and pillage that described violent attacks and sexual abuse against women; statements about "what we want to do to" girls and women in plaintiff's presence; shouting "suck my cock" at plaintiff or at other female students or teachers; yelling "get her" when plaintiff or other females entered the room; shouting "grab her ass" to each other with reference to plaintiff; telling plaintiff to "bend over-you know you want me"; and telling each other to "give her the big one" with reference to plaintiff.

Plaintiff further alleges that the students engaged in threatening or sexually harassing conduct directed at her, including the following: a student grabbed her face and kissed her head; a student made sexual gestures towards her with his tongue and discussed his desire to rape women and cut their nipples off; a student swung a lead pipe towards her head and acted as though he intended to hit her with it; two students occasionally threw knives or Chinese stars at the walls or floors of the classrooms while she was present;

some of the students directed karate-style kicks towards her and came within inches of her face; one student tilted plaintiff's chair back on two legs and told her, "I want to smack you to the ground and cut you from the [sexual organ] up"; a student once grabbed her, threw her against the wall, held her by the neck, pinned her on top of a table, and fell on top of her when the table fell; a student exposed his genitals in the classroom in plaintiff's presence; and a student grabbed his crotch, told plaintiff he had an erection and suggested that she feel it.

Plaintiff also asserts that male students directed sexually harassing conduct at other female students and faculty, including: male students grabbed another female student's buttocks on a daily basis; a student pulled Fish's pants down in front of a class of students and was not disciplined; a student threw Klasen on the floor and pretended to be having sex with her; and two students grabbed Klasen's crotch.

Plaintiff contends that she reported many of the incidents directed at her to either Fish, Molkenthin, or Klasen, and further asserts that several of the specific incidents alleged actually occurred in the presence of these faculty members. She states that Fish once responded to a complaint about the students by reminding her she needed to stay in school in order to maintain her eligibility for welfare benefits. Plaintiff also states that when Molkenthin became aware of a complaint she had made to Fish, he told her she should take the students' behavior as a compliment and said, "They couldn't help it if you turn them on."

In addition to her complaints to MALC faculty, plaintiff alleges that she reported the student harassment to defendant Beddow on one occasion. She states that Beddow responded by telling her there was nothing he could do and that the boys were there because they could not function in a mainstream school. Beddow contends that when he became aware of the inappropriate student behavior occurring at the

MALC he took action by holding several meetings with Fish about consistent enforcement of discipline policies, and by suspending several male students.

Defendants assert that the WCED had a written personnel policy manual during plaintiff's tenure at the MALC, and that she received a copy of it when she began attending the school. The manual included a Title IX policy requiring grievances to be presented in writing to the "Title IX coordinator." Apparently, the coordinator at the MALC was defendant Fish. Defendants contend that plaintiff never submitted a complaint about either the students or Molkenthin to Fish in writing. The manual also included a sexual harassment "conduct policy" requiring staff and students with complaints to notify the "building principal." Defendants state that the "building principal" at the MALC was either Beddow or Fish.

#### e. Alleged favoritism of male students

In addition to her allegations about the harassing conduct of Molkenthin and the MALC students, plaintiff alleges that Fish treated male students at the school more favorably than she treated female students. She specifically asserts that Fish allowed male students, but not female students, to use her personal van during school hours; that male students were permitted to bring pornographic films to school and received credit for watching them; that male students received credit for playing games while female students did not; and that Fish disciplined female students more harshly than she disciplined male students. Plaintiff further alleges that Fish engaged in sexual relationships with at least two male students at the school, and that Fish gave one of them numerous unearned credit hours.

The record reflects that Hiltner, Klasen, and Molkenthin all reported to Beddow that Fish treated male students more favorably than female students. Beddow suspended Fish in December 1993 for two days with pay and provided her with a

letter of deficiency. Deficiencies listed in the letter include: taking a student to a bar, driving students to interviews, allowing students to drive her vehicle, and entering a student's home without permission. Beddow suspended Fish again in January 1994 for five days with pay for taking an unauthorized field trip with several students. After investigating the matter he suspended her with pay indefinitely, and on February 18, 1994, she permanently resigned.

### ANALYSIS

#### I. Summary Judgment Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating motions for summary judgment, the Court must view the facts in a light most favorable to plaintiff. Defendants have the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). For this reason, if any facts are in dispute, the Court must accept plaintiff's representation of the events, as supported by the affidavits, depositions, and other evidence in the record, as true.

#### II. ISD Liability

Plaintiff has named as institutional defendants not only the WCED, the education district responsible for the daily operation of the MALC, but also the separate member ISDs, which by agreement formed the WCED. In their collective memorandum to the Court the ISDs argue that the WCED is a legally separate entity under Minnesota law, and therefore, they are not liable for any injury to plaintiff resulting from her experiences at the MALC.

Minnesota courts have not yet addressed whether an education district formed pursuant to Minn.Stat. § 122.91, such as the WCED, is a separate entity from its member school districts for purposes of determining tort or statutory liability. The ISDs argue that consolidated school districts are legally separate entities from their member school districts under Minnesota law, *see Huffman v. School Board*, 230 Minn. 289, 41 N.W.2d 455, 457 (1950), and urge the Court to expand the existing case law by holding that education districts are likewise separate entities. The ISDs point to similarities between education districts and consolidated school districts, namely, that the Minnesota Department of Children, Families and Learning assigns education districts separate identification numbers, that they have the authority to employ their own personnel and enter into binding contracts, and that a separately established board of directors governs them.

Based on a review of the state statutes governing the formation of "consolidated school districts" and "education districts," the Court finds the ISDs' argument to be unpersuasive. Consolidated school districts are formed under Minn.Stat. § 122.23 by combining preexisting districts, or parts thereof, into a new independent school district. *See* Minn.Stat. § 122.23, subd. 1. An independently elected board governs the new district. *See* Minn.Stat. § 122.23, subd. 18. After a new, enlarged district becomes approved, the boards of the independent school districts contained within it retain authority only to maintain the schools in their districts until the effective date of the consolidation. *See* Minn.Stat. § 122.23, subd. 18(f). In other words, to the extent that their territories become consolidated into a new district, the preexisting component school districts ultimately cease to exist.

In contrast with a consolidated "school district," an "education district" such as the WCED does not take the place of the preexisting school districts within its terri-

tory, but rather exists as a cooperative venture among the member school districts for the purpose of providing special services. *See* Minn.Stat. § 122.91, subd. 1. Member districts continue to exist and control their own territories, and importantly, they maintain continuous control over the operations of the education district they have chosen to form. They exercise this control by appointing representatives to serve on the board governing the education district, and by retaining the power to recall any appointed representative at will. *See* Minn.Stat. § 122.92, subd. 1. These important differences in the way that education districts are structured precludes an automatic finding, based on the consolidated school district case law, that education districts are legally separate entities from their member districts.

Furthermore, even if the Court were to find that the WCED and the ISDs are legally separate, this finding would not necessitate a conclusion that the ISDs are immune from liability for the WCED's acts and omissions if the WCED acted as the ISDs' agent. The agreement of the ISDs to form the WCED not only permits each member district to appoint a representative to the WCED board, but also provides that the superintendent of each member district will serve on the board ex officio. The WCED board is bound by the terms of the originating ISD agreement, and acts expressly on behalf of the participating ISDs. The ISDs maintain additional control over the WCED through the operation of the WCED's program advisory council, which is explicitly structured to permit input from the ISDs on the operation of the WCED's programs. If the WCED ever dissolves, its assets are to be disbursed in proportionate amount among the member districts rather than returned to general state coffers. Furthermore, the agreement requires the WCED board to submit an annual report to the member districts about its activities. The WCED thus acts explicitly under the control of the ISDs with the ISDs' consent. Under com-

mon law agency principles, this control and consent creates an agency relationship between the WCED and the individual ISDs. *See* Restatement (Second) of Agency § 1 (1958).

A principal is liable to third parties for the torts of its agent committed within the scope of the agency. *See* Restatement (Second) of Agency § 216 (1958). The creation and supervision of programs such as the MALC is explicitly within the scope of the WCED's authorized conduct on behalf of the ISDs. For these reasons, even if the ISDs are not directly liable to plaintiff for the WCED's acts and omissions as common legal entities, plaintiff may charge the ISDs with liability under common law agency principles. Without deciding generally whether an education district is a legal entity separate from its member school districts under Minnesota state law, the Court finds on these facts that the level of control the ISDs exercised over the WCED is far too great for the ISDs to be immune from liability for the WCED's acts and omissions.

Moreover, even if the Court were to find that the WCED is a legally separate entity from the ISDs under state law and that it does not act as the ISDs' agent, federal law governs the scope and breadth of Title IX. Federal Department of Education regulations implementing Title IX not only prohibit federal fund recipients from directly discriminating against students and employees on the basis of sex, but also impose upon recipients an affirmative duty to investigate and refrain from facilitating or participating in other educational programs that violate the terms of the Act. *See* 34 C.F.R. § 106.31(d).[3]

The undisputed record reflects that the ISDs were recipients of federal funds during plaintiff's tenure at the MALC, and that the ISDs used at least some of their funds to pay for programs that the WCED operated, including the MALC. By financially supporting the WCED, and by permitting students within their territories to attend the MALC as an alternative source of secondary education, the ISDs facilitated that program. The regulations thus imposed upon the ISDs a duty to ensure that the MALC did not discriminate against students or employees on the basis of sex, and to withdraw from participation in that program if they discovered such discrimination occurring.

For the reasons set forth above, the Court finds that the WCED acted as the ISDs' agent in implementing and directing the MALC program, and therefore, the ISDs are liable for its related acts and omissions. The Court further finds that plaintiff may bring a cause of action against the ISDs under Title IX pursuant to the Title IX implementing regulations. The ISDs' motion for summary judgment on the ground that they are not proper parties to this action is therefore denied.

## III. Defendants' Title IX Liability for Student Against Student Harassment

Defendants argue that student against student harassment is not cognizable under Title IX, and therefore, plaintiff's Title IX claims must be dismissed to

---

**3.** 34 C.F.R. § 106.31(d) provides in relevant part:

This paragraph applies to any recipient [of federal funds] which ... facilitates, permits, or considers [participation in any program it does not wholly operate] as a part of or equivalent to an education program ... operated by such recipient, ... including participation in educational consortia.
\* \* \* \* \* \*
Such recipient ... [s]hall develop and implement a procedure designed to assure itself that the operator or sponsor of such other education program or activity takes no action ... which this part would prohibit such recipient from taking; and ... [s]hall not facilitate, require, permit, or consider such participation if such action occurs.

the extent that they are based on the behavior of the male students at the MALC. A clear split among circuit courts presently exists regarding whether such claims are actionable, and if so, what standards govern them. The Eighth Circuit has not yet weighed into the debate, and although the United States Supreme Court has taken the issue under consideration, *see Davis v. Monroe County Bd. of Educ.,* 120 F.3d 1390 (11th Cir.1997) (en banc), *cert. granted in part,* —— U.S. ——, 119 S.Ct. 29, 141 L.Ed.2d 789 (1998), the Supreme Court is unlikely to issue its opinion for several months. This Court, therefore, must draw upon the conflicting precedents and other relevant law to determine this pressing issue.

Title IX provides that, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a). Title IX explicitly provides for its enforcement by the federal administrative agency responsible for the distribution of funds, through the withdrawal of continued financial assistance or "any other means authorized by law." 20 U.S.C. § 1682. Title IX applies not only to institutions of higher education, but also to "any public or private preschool, elementary, or secondary school." 20 U.S.C. § 1681(c). Defendants do not dispute that the MALC is subject to Title IX as a public secondary school.

Title IX jurisprudence has evolved gradually, beginning in 1979 with the Supreme Court's recognition in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), that an implied private right of action is available under Title IX in addition to its administrative enforcement mechanism. In *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Court defined the remedies available under the implied right of action recognized in *Cannon,* holding that claimant may seek monetary damages as well as prospective equitable relief. *Franklin* thus permitted a high school student to sue her school district based on sexual harassment by a teacher, even though the teacher had already resigned and the student no longer attended the school. *Id.* at 63–64, 112 S.Ct. 1028. *Franklin* specifically addressed the school district's argument that monetary damages should not apply because Title IX was enacted pursuant Congress's Spending Clause power, U.S. Const., Art. I, § 8, cl. 1, and *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 28–29, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), limits the monetary remedies available under Spending Clause statutes to those that the statues explicitly set forth. The Court pointed out that *Pennhurst* involved an unintentional violation of the relevant Spending Clause statute, and noted, "The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award." *Franklin,* 503 U.S. at 74–75, 112 S.Ct. 1028. The Court held this rationale to be inapplicable in a case of intentional discrimination, where notice to the school district of its potential liability is not at issue. *Id.* Borrowing from Title VII jurisprudence, *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that a supervisor who sexually harasses a subordinate employee intentionally discriminates against that employee), the Court determined that a teacher intentionally discriminates against a student by sexually harassing the student, and therefore, *Pennhurst* was inapposite. *Franklin,* 503 U.S. at 75, 112 S.Ct. 1028.

Courts after *Franklin* have struggled to define the standards governing sexual harassment suits brought against schools under Title IX. The important issue of whether schools are subject to potential Title IX liability for peer hostile environment sexual harassment first arose at the appellate court level in *Rowinsky v. Bryan*

*Ind. Sch. Dist.,* 80 F.3d 1006 (5th Cir. 1996). The Fifth Circuit held in *Rowinsky* that Title IX imposes liability against a school in the context of student against student sexual harassment only if the claimant can demonstrate that the school responded differently to complaints about the harassment because of the claimant's sex. *See id.* at 1016. *Rowinsky* thus recognized no institutional liability for peer hostile environment sexual harassment without an additional showing of disparate treatment. The court anchored its holding on the notion that students, unlike teachers, are not agents of the school. *See id.* at 1011 n. 11. The court found no basis in the language, structure, and history of Title IX for third party liability, and concluded that a school district could not be held accountable for the acts of its students. *See id.* at 1011–16.

The Eleventh Circuit echoed *Rowinsky*'s conclusion, but not its rationale, in *Davis v. Monroe County,* 120 F.3d at 1406, presently on review before the Supreme Court. The *Davis* court held that Congress enacted Title IX under the Spending Clause, and cited *Pennhurst* for the proposition that Congress must give unambiguous notice of potential liability in Spending Clause statutes to recipients of federal funds. *See id.* at 1399. The court argued that Congress gave "no clear notice to schools and teachers that they ... would accept responsibility for remedying student-student sexual harassment when they chose to accept federal financial assistance under Title IX." *Id.* at 1406. Under this rationale the court held that peer hostile environment sexual harassment is not cognizable under Title IX.

Other circuits have reached the opposite conclusion. The Ninth Circuit held in *Oona v. McCaffrey,* 143 F.3d 473, 476 (9th Cir.1998), that student against student harassment is actionable under Title IX. The court noted that in *Franklin,* 503 U.S. at 75, 112 S.Ct. 1028, the Supreme Court analogized Title VII claims to Title IX sexual harassment claims and cited Title VII case law to support its holding that monetary damages are available under Title IX. Based on this language, the *Oona* court held that "Title VII standards apply to hostile environment claims under Title IX." *Id.* at 477. The court rejected both *Rowinsky* and *Davis* on the ground that those cases misconstrue peer harassment claims as seeking to impose vicarious liability on schools, rather than direct liability for a school's own discriminatory failure "to remedy a known hostile environment." *Id.*

The only other circuit to determine this issue with finality is the Seventh Circuit,[4] holding in *Doe v. University of Illinois,* 138 F.3d 653, 661–62 (7th Cir.1998), that peer hostile environment sexual harassment claims are actionable under Title IX in narrow circumstances. *Doe* imposes liability on schools only upon a showing of actual knowledge about the harassment on the part of school officials, combined with a failure to respond appropriately to end the harassment:

> [A] Title IX fund recipient may be held liable for its failure to take prompt, appropriate action in response to student-on-student sexual harassment that takes place while the students are involved in school activities or otherwise under the supervision of school employees, provided the recipient's responsible officials

4. The Fourth Circuit addressed this issue in *Brzonkala v. Virginia Polytechnic Inst. & State Univ.,* 132 F.3d 949 (4th Cir.1997), *vacated, reh'g granted,* (4th Cir. Feb. 5, 1998), holding that student against student sexual harassment is actionable under Title IX if the claimant can demonstrate that school officials either knew or should have known that the harassment was occurring. As the Fourth Circuit has now vacated its opinion, *Brzonka-*

*la* is no longer good law. Other courts have considered Title IX peer harassment hostile environment claims but resolved them without deciding whether such claims are generally cognizable. *See Bosley v. Kearney R–1 School District,* 140 F.3d 776 (8th Cir.1998) (affirming summary judgment on insufficient evidence grounds); *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996) (finding that the harassment alleged was not sexual in nature).

actually knew that the harassment was taking place.

*Id.* at 661. The court rejected any requirement that the claimant plead or prove that school officials failed to respond because of sexually discriminatory intent, arguing that the failure to take appropriate steps promptly in response to known harassment is itself intentional discrimination. *See id.*

*Doe* specifically addressed and rejected the rationales underpinning both *Rowinsky* and *Davis.* The court criticized *Rowinsky* for considering the pertinent issue to be whether a school should be held liable for the acts of third persons who were not its agents. Arguing that *Rowinsky* "fundamentally misunderstands the nature of the claim," the court asserted that a claimant in this context does not seek to impose liability on schools for the acts of students, rather, she seeks to hold the school liable for its own "actions and inaction in the face of its knowledge that the harassment was occurring." *Id.* at 662. The lack of an agency relationship between the school and the harassing student therefore is not dispositive.

The court recognized that *Davis* carefully avoided *Rowinsky's* agency argument, but instead rested its holding on a Spending Clause analysis and the unambiguous statement rule established in *Pennhurst.* *See id.* at 662–63. The court criticized *Davis* for ignoring *Franklin's* authoritative finding that explicit notice of a federal funding recipient's potential liability under the Spending Clause statute at issue is unnecessary in a case of intentional discrimination. *See id.* The court noted that the claimant's allegation assumed "that the combination of knowledge that sexual harassment is occurring in activities under the school's control and intentional failure to take prompt, appropriate action ... is presumably, perhaps even necessarily, a manifestation of intentional sex discrimination." *Id.* at 663. The court thus suggested that when a school knowingly fails to take "prompt, appropriate action" to end

ongoing peer sexual harassment, a presumption of intent to discriminate arises and *Pennhurst's* unambiguous statement rule is inapplicable. In defining "prompt, appropriate action," the court emphasized that its holding should not be read as a license for courts to criticize the professional judgments of school officials. *See id.* at 667. Schools need not completely eradicate sexual harassment nor adopt any foreordained "correct" solution. *See id.* Rather, "it should be enough to avoid Title IX liability if school officials investigate aggressively all complaints of sexual harassment and respond consistently and meaningfully when those complaints are found to have merit." *Id.* at 667–68.

Dissenting from the court's decision to deny a rehearing en banc, Chief Judge Posner concurred with the *Doe* majority's finding that student against student harassment claims are actionable under Title IX, but otherwise criticized the standards that it established as being unclear. *See id.* at 679–80. Judge Posner argued instead for a "deliberate indifference" standard. He described deliberate indifference as the level of intent held by a school when it "knows about the harassment, knows that it is serious ... and could take effective measures at low cost to avert the danger, but decides-consciously, deliberately-to do nothing, although it does not base this decision on an invidious ground such as race or sex." *Id.* at 680. He further explained that deliberate indifference describes a level of intent greater than gross negligence or recklessness. *See id.* Finally, Judge Posner proposed a test under which claimants could establish deliberate indifference:

> Deliberate indifference by the school ... would mean that the school (1) actually knew of (2) hostile or offensive conduct likely to interfere with the victim's education, and (3) deliberately did nothing, or took steps that it knew would be ineffectual, to protect the victim, (4) without excuse (for it might be difficult

or even impossible to take effective measures).

*Id.*

All of the circuit opinions addressing whether student against student harassment is actionable under Title IX predate the Supreme Court's most recent Title IX decision. In *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), the Court for the first time definitively established the level of knowledge and intent on the part of school officials that a claimant must demonstrate in order to state a claim under Title IX in the context of sexual harassment against a student by a teacher:

> [I]n cases ... that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.
>
> We think, moreover, that the response must amount to deliberate indifference to discrimination.

*Id.* at 1999.

In adopting this actual knowledge plus deliberate indifference test, the Court explicitly rejected *Oona*'s conclusion that Title VII standards apply to Title IX claims.[5] The Court explained that its reference to *Meritor* in *Franklin* stood merely for the general proposition that "sexual harassment can constitute discrimination on the basis of sex under Title IX," *id.* at 1995, and not for the proposition that respondeat superior can be a basis for Title IX liability. The Court distinguished Title IX from Title VII, noting that Title VII contains an express reference to agency principals, defining "employer" to include "any agent," while Title IX contains no such reference.

*Id.* at 1996. The Court further noted that Congress framed Title IX in terms of a contractual condition between the recipient of funds and the government not to use the funds provided to support discriminatory practices, while Congress framed Title VII "in terms not of a condition but of an outright prohibition." *Id.* at 1997. The Court argued that Title IX's contractual structure defines it as an enactment under the Spending Clause, and that in the enforcement of a Spending Clause statute courts must be careful to ensure that the recipient has notice of its potential liability for monetary damages. *See id.* at 1998. The Court found vicarious liability to be at odds with this notice requirement. *See id.*

The Court further noted that Title IX's explicit provision for enforcement by federal administrative agencies prohibits an agency from acting until it has notified the recipient of its failure to comply with Title IX and determined that it cannot secure the recipient's voluntary compliance. *See id.* at 1998. The Court suggested that since Title IX's express remedial scheme requires actual notice to school officials, courts should likewise impose an actual notice requirement on Title IX claims brought under the private right of action judicially implied in *Cannon. See id.* at 1998–99. Moreover, the Court asserted that Title IX's explicit administrative enforcement scheme presupposes "an official decision by the recipient not to remedy the violation." *Id.* at 1999. According to the Court, the deliberate indifference standard provides a "rough parallel" to this framework. *Id.* For these reasons, the Court required a showing of both actual knowledge and deliberate indifference on the part of school officials in order to state a teacher against student sexual harassment claim under Title IX. *See id.* at 2000.

Although *Gebser* sets the standard only for teacher against student harassment, it

---

5. *Gebser* also directly overrules the Eighth Circuit's determination in *Kinman v. Omaha Pub. Sch. Dist.*, 94 F.3d 463, 469 (8th Cir. 1996), that the Title VII "knew or should have known" standard is applicable to Title IX claims alleging teacher against student sexual harassment.

carries significant implications for the resolution of the challenge to peer against peer harassment claims at issue here. Of critical importance is the Supreme Court's decision to find agency principals wholly inapplicable to Title IX claims. Under *Gebser*, a school district's liability to a student for sexual harassment by a teacher does not rest on the teacher's relationship with the school as its agent, but rather, on the school's own intentional failure to remedy the situation. A school's intentional failure to remedy known student against student harassment is materially indistinguishable from its intentional failure to remedy teacher against student harassment. In both circumstances the school's obligation to act arises not from its relationship to the wrongdoer, but from its use of federal funds to operate a program under which it knows sexual harassment is occurring. Both the harassing student and the harassing teacher are participants in the school's programs, and both are to some extent under the control of the school and subject to its disciplinary authority. The school's obligation to prevent student against student harassment is no less apparent than its obligation to prevent teacher against student harassment under the text of Title IX, which merely states that no person shall be denied the benefits of any federally funded education program on the basis of sex.[6] 20 U.S.C. § 1681(a).

One might argue that a school's obligation to protect students from peer harassment differs from its obligation to protect them from harassment by a teacher, because of basic differences between adults and children. Children are naturally prone to outbursts of unacceptable behavior, making it more difficult for schools to prevent and control peer harassment. Furthermore, teachers occupy a position of

authority over students, thus increasing the probable impact of teacher against student harassment and the likelihood that such harassment will interfere with a student's education. For these reasons, teacher against student harassment is likely to be more harmful, but easier to prevent, than student against student harassment. In light of these considerations, a school's responses to the same harassing conduct by a teacher and a student need not be identical, and what qualifies as a de minimus response on the part of school officials in one situation might constitute a meaningful response in the next. Nevertheless, although these considerations are important to a determination of what prevention remedies, if any, a school is obligated to implement in response to known harassment, they do not affect the determination of whether student against student harassment is generally actionable. The *Gebser* Court's rejection of agency principals as a ground for teacher against student harassment Title IX liability leaves little logical basis for distinguishing between peer harassment and teacher harassment suits. For this reason, *Gebser* supports a finding that student against student harassment is actionable under Title IX.

The *Gebser* decision also must guide the Court's determination of what standards govern peer sexual harassment claims under Title IX. In light of *Gebser*, this Court cannot follow the circuit opinions permitting peer sexual harassment claims to proceed upon a showing of either constructive notice or intent less than deliberate indifference. A more liberal intent requirement for peer sexual harassment claims than the requirement applicable to teacher sexual harassment claims would be difficult to justify. Furthermore, permitting student against student harassment claims

---

6. The Eleventh Circuit's reasoning in *Davis*, that student-student harassment is not actionable under Title IX because Title IX provides no notice to schools that by accepting funds they would accept responsibility for remedying such harassment, is directly undermined

by the Supreme Court's findings in *Franklin* and *Gebser* that teacher-student harassment is actionable. Neither form of harassment is explicitly mentioned in either the text of Title IX, *see* 20 U.S.C. § 1681(a), or its legislative history, *see Davis*, 120 F.3d at 1395–97.

to proceed upon a lesser showing of intent would raise concerns about whether schools had sufficient notice of the potential liability attached to the receipt of federal funds.[7] Moreover, as argued above, no principled distinction exists between teacher harassment and peer harassment under the *Gebser* rationale. For these reasons, the Court follows the test established in *Gebser* and holds that actual notice and deliberate indifference on the part of school officials with the authority to act are required to establish a Title IX claim based on student against student sexual harassment.

Opening Title IX to student against student harassment claims raises obvious concerns about the potential flood of litigation that might ensue if parents are permitted to bring every grievance they have about student discipline into federal court. Schools respond to behavior problems on a daily basis, and complaints about student against student misconduct of a sexual nature likely occur with great frequency. Permitting suits to go forward every time a student complains that his or school did not do enough in response to a minor teasing incident, for example, could cripple a school's financial resources and effectively prevent any student from obtaining a good education. The line between what constitutes ordinary teasing and what constitutes actionable "harassment" is difficult to draw, but the Supreme Court's decision in *Gebser* makes clear that courts should not incorporate notions of what constitutes hostile environment "discrimination" in the Title VII employment context into Title IX. Limitations found within the language of Title IX itself help define the contours of this cause of action to some degree: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program ...." Under these terms, sexual harassment is not actionable under Title IX unless it is so severe that it effectively excludes the recipient student from participation in the program, denies him or her the benefits of that program,[8] or rises to such a level that courts could properly describe a school that deliberately ignores the harassment as itself discriminating against the student on the basis of sex. Grade-school teasing arguably cannot rise to this level of severity. Reasonable school officials would regard such behavior as a part of normal childhood development, and therefore, should not be charged with discriminatory intent for permitting it to occur without substantial intervention.

Turning to the case at bar, the Court finds that defendants cannot dispute that officials in positions of authority had actual notice that the student misconduct plaintiff complains of was occurring. Plaintiff states that she complained to both Molkenthin and Klasen about the students' conduct on several occasions. As teachers, they had immediate responsibility over student discipline in their classrooms. Moreover, according to the WCED's written policy manual, defendant Fish was both the MALC's "Title IX coordinator" and one of two persons who could be categorized as a "building principal" responsible for receiving complaints under the dis-

---

7. *See Gebser,* 118 S.Ct. at 1998 (discussing the concern that recipients of federal funds have notice of potential liability in statutes enacted pursuant to Congress's power under the Spending Clause); *Pennhurst,* 451 U.S. at 28–29, 101 S.Ct. 1531 (limiting monetary damages under Spending Clause statutes because of the concern that receiving entities lack notice that they will be liable for such damages); *Franklin,* 503 U.S. at 74–75, 112 S.Ct. 1028 (stating that the notice problem does not arise when a claimant alleges intentional discrimination).

8. Any student who leaves a school or even stays home for a few days in response to another student's teasing might allege that he or she has been "denied" all of the benefits of the program. Because different students may react to the same behavior with varying degrees of discomfort, courts should consider whether a student's claim that he or she was denied the benefits of an educational program is objectively reasonable.

trict's sexual harassment conduct policy. As such, she was an official with the authority to take steps to prevent sexual harassment at the MALC. Plaintiff alleges not only that she reported several of the harassing incidents directly to Fish, but also that much of it occurred in Fish's presence, and that some of the students even directed harassing conduct towards Fish herself. Plaintiff further alleges that she reported the harassment directly to defendant Beddow on at least one occasion, and Beddow admits that he was aware of some of the students' conduct at the MALC. Beddow was the MALC's superintendent while plaintiff attended the school, and thus had ultimate responsibility for its management. Furthermore, like Fish, Beddow could be categorized as a "building principal" responsible for complaints under the WCED's sexual harassment conduct policy. For these reasons, plaintiff easily meets the burden of demonstrating that officials with authority to act had actual knowledge of the students' harassing behavior at the MALC.

Whether MALC officials responded to plaintiff's complaints with deliberate indifference is a more difficult issue to resolve. *Gebser* provided the courts with little guidance as to what constitutes "deliberate indifference" in the Title IX context, leaving open the possibility that whether officials acted with deliberate indifference is simply an ultimate fact issue for juries to decide whenever actual knowledge is also present. Judge Posner's argument in *Doe* that a clearer test for deliberate indifference is necessary is compelling, however, the Court declines at this stage in the development of the law to either adopt or reject Judge Posner's proposed test. For the purpose of deciding defendants' summary judgment motion, it is sufficient for the Court to find that plaintiff's allegations would satisfy either a generalized reasonable jury inquiry or a more rigid analysis such as that proposed by Judge Posner.

Plaintiff's allegations in the case at bar suggest that the harassment directed at her by her peers was both severe and pervasive. She has alleged that students made numerous comments and physical threats of a sexual nature towards her over a substantial period of time. Several of the comments and behaviors that the students allegedly directed towards her were not only offensive, but also violent or even life-threatening. Furthermore, plaintiff alleges that she was not the only victim of this misconduct, which the perpetrators directed at other students, teachers and even school officials. Plaintiff's complaint paints a disturbing picture of the school's atmosphere, where sexual harassment was not isolated or hidden but open, recurring, and frequently tolerated. Ultimately, plaintiff claims the environment at the MALC became so intolerable that she was forced to terminate her studies there altogether.

Although plaintiff's allegations are weighty, a review of the record indicates that the school district did not entirely fail to respond to the MALC's numerous disciplinary problems. Defendants allege that Beddow expelled or suspended several students as a result of their misconduct and held meetings with Fish to discuss the consistent enforcement of discipline policies. Defendants further assert that many of the students attending the MALC were classified with behavior disorders which made them more difficult to control. Furthermore, defendants argue that state law [9] restricted their ability to expel students for misconduct related to a disability with which they were classified. Defendants argue that under these circumstances the school's response to the sexual harassment was appropriate.

Although it appears that school officials did respond to some incidents of sexual harassment at the school, they ignored other incidents. Plaintiff cites several specific instances of misconduct occurring in Fish's presence which Fish ignored or al-

9. Minn. R. 3525.2470, subp. 3.

legedly encouraged. Importantly, plaintiff alleges that defendants Beddow, Fish, and Molkenthin each responded to her complaints by telling her that nothing could be done to remedy the situation, or by suggesting that she should tolerate it. Moreover, plaintiff counters defendants' argument that state law limited their ability to discipline the students by pointing to another "special needs" area learning center where, according to its director, similar misconduct would have been much more severely disciplined.

■ A claimant may demonstrate deliberate indifference by showing that a school district took only minor steps to address the harassment with the knowledge that such steps would be ineffective. *See, e.g., Doe,* 138 F.3d at 680 (Posner opinion). For this reason, defendant's assertions that it responded to some instances of harassment does not necessarily defeat plaintiff's ability to demonstrate that school officials responded to her complaints with deliberate indifference. The record before the Court does not include any evidence of disciplinary action taken by MALC officials in direct response to any of plaintiffs' specific complaints.

The Court finds that officials with the authority to act had actual knowledge of ongoing student against student sexual harassment against plaintiff at the MALC, and that the alleged harassment was both objectively and subjectively so severe that it effectively denied plaintiff the benefits of participating in the program. Furthermore, in light of the severity and pervasiveness of the harassment to which plaintiff allegedly was exposed, the Court finds that plaintiff has raised a genuine issue of fact as to whether officials intentionally disregarded her complaints or responded to them ineffectively. Moreover, plaintiff raises a fact issue as to whether the school officials' authority to respond to her complaints was so limited as to excuse their failure to take effective steps. For these reasons, assuming Judge Posner's test to be applicable, and reviewing the facts in a

light most favorable to plaintiff, she has sufficiently supported her claim to survive defendants' summary judgment motion. Furthermore, the Court holds generally that a reasonable jury could find that MALC officials with the authority to discipline the students responded to their misconduct with deliberate indifference. Defendants' motion for summary judgment dismissing plaintiff's Title IX peer sexual harassment claim against the WCED and the ISDs is therefore denied. Because plaintiff's claims against the individual defendants under Title IX raise additional issues, those claims are discussed separately below.

## IV. Institutional Liability for Teacher Against Student Harassment Under Title IX

■ The WCED and the ISDs seek summary judgment against plaintiff's Title IX claim for teacher against student harassment on the ground that WCED officials had no knowledge about Molkenthin's alleged inappropriate conduct towards plaintiff. Under *Gebser,* in order to prove her teacher against student harassment claim plaintiff must demonstrate that "an official who at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf ha[d] actual knowledge" and "fail[ed] adequately to respond." *Gebser,* 118 S.Ct. at 1999. She must also demonstrate that the official acted with "deliberate indifference" to the discrimination. *Id.*

If the Court were to adopt defendants' rendition of the facts as true, plaintiff's claim would clearly fail under *Gebser* on the ground that school officials had no actual knowledge of the discriminatory conduct. Plaintiff has submitted deposition testimony contradicting defendants' characterization of the facts, however, and in the present posture of the case the Court must view the facts in the light most favorable to plaintiff. Plaintiff specifically alleges that she told defendant Fish about

Molkenthin's comment that she was the "sexiest boy" he had ever seen. Plaintiff claims that during the same conversation, she also told Fish, "[H]e does things and I didn't want to be around him any more," that he invited her over to his house constantly, and that she wanted him to stop. Whether Fish had final authority to discipline Molkenthin is not clear from the record, however, as the acting principal of the MALC, the school's sexual harassment coordinator and Molkenthin's superior, Fish had the power and the official responsibility to begin the process of addressing plaintiff's complaint. Plaintiff therefore supports her claim that a school official with the authority to remedy the alleged harassment had actual knowledge that it was occurring. Moreover, the record reflects no effort whatsoever on the part of Fish to discipline Molkenthin, counsel him, segregate him from plaintiff, or even to report plaintiff's complaints about him. Plaintiff claims that Fish responded to her complaints by reminding her that she needed to attend school at the MALC in order to continue receiving government welfare benefits. Assuming plaintiff's allegations to be true, Fish's response to her complaints evidences a deliberate and conscious decision to permit Molkenthin's conduct to continue free from intervention. Based on this record, the Court finds that plaintiff has raised a genuine issue of material fact as to whether Fish responded to her complaints with deliberate indifference.

Fish's failure to respond to plaintiff's complaints nonetheless falls outside the scope of Title IX if the misconduct about which she had notice was not so egregious as to necessitate a response. *Gebser* requires a claimant to prove not only actual notice and deliberate indifference, but also that the response to the alleged discrimination was inadequate. *See Gebser*, 118 S.Ct. at 1999. The misconduct alleged in this case falls far short of the harassment at issue in *Gebser*, in which a high-school teacher admitted to having sexual intercourse with one of his students. *See id.* at

1993. In that case the severity of the teacher's alleged misconduct was beyond dispute. Nevertheless, plaintiff claims that she did report to Fish that Molkenthin directed sexual comments towards her. Even more troubling, plaintiff put Fish on notice that Molkenthin had persistently invited her to go home with him and plainly stated a request that Fish do something to intervene. In the context of a teacher-student relationship, such conduct is not only inappropriate, but also harassing and intimidating. Although the information that Fish allegedly acquired as a result of plaintiff's complaints probably would not have justified immediate discipline against Molkenthin, a reasonable jury could find that she had a duty to investigate the incidents about which plaintiff told her and to consider whether any remedial action was necessary. Fish's failure to respond in any way whatsoever brings plaintiff's complaint within the scope of Title IX, and therefore, the ISDs' and WCED's motions for summary judgment are denied.

## V. Individual Liability Under Title IX

■ Defendants Beddow, Fish and Molkenthin seek ,summary judgment against both of plaintiff's Title IX claims on the ground that Title IX does not establish a direct cause of action against school officials in their individual capacities. The individual defendants argue that the language of Title IX targets only educational institutions, because they are the recipients of the federal funds from which Title IX liability arises.

The weight of the authorities supports the individual defendants' position. *See, e.g., Smith v. Metro. School Dist. Perry Township*, 128 F.3d 1014, 1019 (7th Cir. 1997); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 730 (6th Cir.1996) (Nelson, J., concurring); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988); *Clay v. Bd. of Trustees of Neosho County Community College*, 905

F.Supp. 1488, 1495 (D.Kan.1995); *Burrow v. Postville Community School Dist.,* 929 F.Supp. 1193, 1207–08 (N.D.Iowa 1996). Furthermore, plaintiff now concedes in memoranda opposing the individual defendants' motions that school district employees are not directly liable under Title IX. Accordingly, plaintiff's direct Title IX claims against defendants Beddow, Fish and Molkenthin are dismissed.

## VI. Individual Title IX Liability Under 42 U.S.C. § 1983

■■ Recognizing that she has no actionable claims against the individual defendants directly under Title IX, plaintiff now moves the Court to amend her complaint in order to add a count against defendants Beddow, Fish, and Molkenthin under 42 U.S.C. § 1983 for violation of her rights protected under Title IX. Defendants oppose plaintiff's motion on the ground that an amendment to the complaint would be untimely, prejudicial and futile.

### A. Untimeliness of the proposed amendment

Defendants argue that plaintiff's motion to amend the complaint should be denied because the pretrial order in this matter established April 1, 1997 as the deadline for amendments to the pleadings, and plaintiff did not serve her motion to amend the complaint until April 15, 1998. Defendants thus contend that plaintiff's motion to amend the complaint is untimely. Defendants further note that the magistrate judge ordered discovery closed as of December 15, 1997, and on that basis argue that plaintiff's proposed amendment would be prejudicial.

The Federal Rules of Civil Procedure provide that when a party seeks leave to amend the pleadings after the opposing party has served a responsive pleading, "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A district court abuses its discretion if it denies a party's motion to amend without justification:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Although plaintiff filed her motion more than a year after the deadline for amendments to the pleadings, the Court finds that untimeliness is not a basis for denying it. Defendants point to no evidence of bad motives or dilatory tactics on the part of plaintiff. Moreover, plaintiff's proposed amendment only marginally alters her theory of the case. The individual defendants were already on notice that she sought damages from them on the basis of Title IX—the additional claim merely imports the added elements of proof required to establish individual liability under section 1983. Furthermore, the original complaint also states claims for a number of constitutional violations under section 1983, and therefore, the individual defendants were already aware of the need to address any issues generally surrounding a determination of individual liability under section 1983. Defendants have already deposed plaintiff's witnesses at length and can point

to no specific evidence that they would seek to obtain on the basis of plaintiff's amendment, had she proposed it earlier, that they have not already acquired. For these reasons, any possibility that defendants would suffer undue prejudice as a result of the amendment appears to be quite remote. In the unlikely event that defendants come forward with a showing of specific evidence needed that in the ordinary course of litigation they could not have obtained previously, the Court would consider a motion for an order reopening discovery for the limited purpose of addressing the amendment.

## B. Futility of the proposed amendment

■ Defendants further contest plaintiff's proposed amendment on the ground that it would be futile. Defendants assert that the Court must ultimately dismiss plaintiff's additional claim, because the Eighth Circuit does not recognize individual liability under section 1983 based on Title IX violations.

In adopting this position, defendants erroneously minimize the impact on this issue of the Eighth Circuit's decision in *Crawford v. Davis,* 109 F.3d 1281 (8th Cir.1997). The plaintiff in *Crawford* raised direct claims against a university under Title IX, in conjunction with claims against the university and its officials individually under section 1983 based on Title IX and the Equal Protection Clause. The defendants argued that Title IX subsumed the plaintiff's section 1983 claims under the Sea Clammers doctrine, which provides that, "[w]hen the remedial devices proposed in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).[10] The *Crawford* court denied the defendants' motion and held that the Sea Clammers doctrine is inapplicable to section 1983 claims based on Title IX. *See Crawford,* 109 F.3d at 1283–84. In so holding, the court reasoned that Title IX does not contain a "sufficiently comprehensive" remedial scheme. *Id.* at 1284 ("[T]here is no evidence that Congress intended to foreclose the use of § 1983 to redress violations of Title IX."). Although the circuit courts presently are split on this issue,[11] *Crawford* binds courts in the Eighth Circuit to its holding that section 1983 suits based on alleged deprivations of rights secured by Title IX are permissible.

Although defendants recognize *Crawford* as binding authority, they argue that its holding narrowly permits section 1983 suits under Title IX against school district employees in their official capacities only. They assert that this Court should not "expand" *Crawford* to permit plaintiff's claims against Beddow, Molkenthin and Fish individually.

Defendants' argument falters for want of a legal justification for distinguishing between official and individual capacity suits in the manner defendants advocate. The case law makes no such distinction, and the text of section 1983 itself indicates that its provisions apply to individuals. *See* 42 U.S.C. § 1983 (imposing liability on "every person" acting under color of state law who deprives a citizen of his or her rights secured under the Constitution and

---

**10.** *National Sea Clammers* narrowed the Court's prior holding in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), that section 1983 authorizes claims to redress violations by state officials of rights that federal statutes create.

**11.** *Compare Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 722–24 (6th Cir.1996), *and Seamons v. Snow,* 84 F.3d 1226, 1233–34 (10th Cir.1996) (holding Sea Clammers doctrine inapplicable to Title IX claims brought under section 1983), *with Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist.,* 163 F.3d 749, 757 (2nd Cir.1998), *Waid v. Merrill Area Pub. Schs.,* 91 F.3d 857, 862–63 (7th Cir.1996), *and Williams v. Sch. Dist. of Bethlehem,* 998 F.2d 168, 176 (3rd Cir.1993) (holding Sea Clammers doctrine applicable).

**914**

laws of the United States). Furthermore, defendants' argument ignores the fact that the plaintiff in *Crawford* actually did bring suit against officials in their individual capacities. *See Crawford,* 109 F.3d at 1282–83. Although the officials in *Crawford* apparently brought the appeal under consideration in their official capacities only, *see id.* at 1282, the court acknowledged the defendants' contention on appeal that the Sea Clammers doctrine precluded claims "for monetary damages against [the officials] in their individual capacities" as well. *Id.* at 1283. Having made this acknowledgment, the court in the same context held the Sea Clammers doctrine generally inapplicable to section 1983 claims based on Title IX without distinguishing between official and individual capacity suits. In light of *Crawford*'s failure to make the distinction defendants advocate, and defendants' failure to offer a theoretical justification for such a distinction, the Court holds that school district officials individually are subject to liability under section 1983 for acts that deprive a claimant of his or her rights secured under Title IX. Defendants have thus failed to demonstrate that plaintiff's proposed amendment to the complaint would be futile, and furthermore, have failed to demonstrate that prejudice will result from it. For these reasons, plaintiff's motion to amend the complaint is granted.

### C. Qualified immunity

██ The individual defendants further argue that even if the Court grants plaintiff's motion to amend, her claims against them in the amendment fail under the doctrine of qualified immunity. The qualified immunity doctrine provides that a public official performing a discretionary function is immune from suit if his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is not merely an affirmative defense—rather, it

provides the official with immunity from suit. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

██ Whether qualified immunity bars plaintiff's section 1983 Title IX claims against the individual defendants thus depends on whether her rights under Title IX were clearly established at the time of the alleged conduct. Plaintiff brings two claims against defendants under Title IX, asserting both the right to be free from sexual harassment by a teacher, and the right to be free from sexual harassment by her peers.

The Supreme Court first recognized that Title IX claims based on teacher against student harassment were cognizable in *Franklin,* 503 U.S. at 63–64, 75, 112 S.Ct. 1028. The Court decided *Franklin* in February 1992, thereby establishing that students have a statutory right under Title IX to be free from teacher against student harassment. *See Crawford,* 109 F.3d at 1284 (citing *Franklin* as the basis for its holding that the plaintiff's right to be free from sexual harassment by a teacher was clearly established in 1994). Plaintiff's tenure at the MALC did not begin until the Fall of 1992, and therefore, all of the conduct at issue in this matter followed *Franklin.* Plaintiff's teacher against student harassment claim therefore alleges a violation of clearly established statutory rights to which qualified immunity does not apply.

██ In contrast, plaintiff's entitlement to protection under Title IX from peer against peer harassment is to date a matter of controversy. As noted above, the circuit courts are presently split on the issue of whether student against student harassment claims are cognizable under Title IX. The Eighth Circuit has delivered no guidance on this issue, and the Supreme Court currently has taken it under advisement. Given the unsettled state of the law, MALC officials could not have had fair warning of their potential liability

under Title IX for failing to prevent plaintiff's harassment by other students. Under these circumstances, the Court finds that plaintiff's entitlement to protection from student against student harassment under Title IX was far from clearly established when the events giving rise to her claim allegedly occurred.[12] Furthermore, the Court finds that because the individual defendants had the authority to determine when student discipline was appropriate, their failure to properly execute such discipline falls with their discretionary functions as WCED employees. Plaintiff's section 1983 student against student harassment claims under Title IX against defendants Beddow, Molkenthin, and Fish are accordingly barred by the doctrine of qualified immunity.

### D. Direct liability for teacher against student harassment

Because the Court dismisses plaintiff's student against student harassment claims against the individual defendants on qualified immunity grounds, her teacher against student harassment allegations provide the only remaining basis for individual liability under Title IX through section 1983.

Section 1983 provides: "Every person who, under color of [state law] subjects, or causes to be subjected, any citizen ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured ...." Defendant Molkenthin is therefore liable to plaintiff if, acting under color of state law, he deprived plaintiff of her right to be free from teacher against student sexual harassment as secured by Title IX. An official acts "under color of state law" if he

exercises power possessed "by virtue of state law" or "abuses the position given to him by the state." *Roe v. Humke*, 128 F.3d 1213 (8th Cir.1997). Because Molkenthin's potential liability to plaintiff arises from actions taken under the cloak of his authority as a teacher with the MALC, Molkenthin was acting "under color of state law" when he committed the alleged wrongs giving rise to plaintiff's claims.

Although Molkenthin does not contest that he acted under color of law, he argues that he is not liable for his conduct towards plaintiff because his alleged actions were "de minimus" and did not rise to a level that deprived her of her statutory or constitutional rights. Plaintiff accuses Molkenthin of making a number of sexually explicit comments towards her, touching her inappropriately on several occasions, and repeatedly inviting her to go home with him so that he could photograph her. The Court rejects defendant Molkenthin's characterization of this behavior as "de minimus" in the context of a teacher-student relationship. A reasonable jury could find on these facts that Molkenthin discriminated against plaintiff through sexual harassment, and that such harassment was severe enough to interfere with plaintiff's ability to tolerate the environment at the MALC and to continue receiving an education there. Plaintiff has therefore raised genuine issues of material fact as to whether Molkenthin caused a deprivation of her rights under Title IX. His motion for summary judgment against this claim is accordingly denied.

### E. Supervisory liability for teacher against student harassment

Plaintiff does not claim that either Beddow or Fish committed affirmative

---

12. Plaintiff notes that the Ninth Circuit reached the opposite conclusion in *Oona v. McCaffrey*, 143 F.3d at 477. The court in *Oona* interpreted *Franklin* to hold that, "Title VII standards apply to hostile environment claims under Title IX." The court further noted that in a previous Title VII decision the Ninth Circuit recognized that hostile environments include peer harassment. Based on these precedents the court concluded that *Franklin* clearly established a student's right to be free from peer harassment under Title IX. The error in the *Oona* court's reasoning became apparent when the Supreme Court explicitly held in *Gebser* that Title VII standards do not apply to Title IX claims. *Gebser*, 118 S.Ct. at 1995–97. For this reason, the Court declines to follow *Oona*.

acts that directly deprived her of her rights under Title IX. Instead, she seeks to hold them liable, as Molkenthin's supervisors, for their failure to investigate her complaints and protect her from future violations of her Title IX rights. Plaintiff's supervisory liability claim rests on well-established principals set forth in *Howard v. Adkison*, 887 F.2d 134, 137–38 (8th Cir. 1989). Noting that supervisory public officials are not subject to liability for the acts of their subordinates under the doctrine of respondeat superior, *see id.* at 137, the court in *Howard* held that supervisors nonetheless are subject to section 1983 liability "when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." *Id. Howard* rejected the argument that in order to establish the requisite mental state for deliberate indifference, a claimant must prove that the supervisor actually knew of the misconduct. *Id.* at 138. The court argued instead that "reckless disregard," based on a showing that the supervisor knew or should have known about the misconduct, is sufficient to establish supervisory liability. *Id. Howard* then concluded that a "single incident, or series of isolated incidents" is "usually" insufficient to support a finding of reckless disregard for or tacit authorization of the subordinate's violative acts.

The Eighth Circuit has imposed substantially higher burdens than those set forth in *Howard* on students seeking to hold supervisors liable under section 1983 for failing to prevent sexual harassment by a teacher. In *Jane Doe A. v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir.1990), the court held that supervisory liability claims in this context must be predicated on a showing that the supervisor:

1) Received notice of a pattern of unconstitutional acts committed by subordinates;

2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts;

3) Failed to take sufficient remedial action; and

4) That such failure proximately caused injury to the children.

*Id.* (citing *Wilson v. City of North Little Rock*, 801 F.2d 316, 322 (8th Cir.1986)); *see also Kinman*, 94 F.3d at 467 (citing *Jane Doe A.* with approval); *Larson v. Miller*, 76 F.3d 1446, 1453 (8th Cir.1996) (same). Under *Howard*, proof of a pattern of unconstitutional conduct is not imperative, rather, *Howard* states that proof of more than a few isolated incidents is only "usually" required as evidence that the supervisor acted with reckless disregard for or tacit authorization of the misconduct. Unlike *Howard*, *Jane Doe A.* establishes that proof of a "pattern" of misconduct is mandatory. Importantly, under *Jane Doe A.*, a claimant's case fails without this showing, even if the claimant separately has demonstrated that the supervisor acted with deliberate indifference to his or her constitutional rights.[13]

Plaintiff's claim against defendant Fish thus depends on a showing that Fish had

---

**13.** *Jane Doe A.* thus requires courts to dismiss claims against a supervisor based on failure to discipline a single incident of subordinate misconduct, even if the supervisor has actual knowledge of the misconduct but deliberately decides to do nothing, and even if the misconduct is shockingly egregious. As argued below, the Court finds in this case that Molkenthin's alleged behavior did constitute a pattern of conduct in violation of plaintiff's Title IX rights, and therefore, the "pattern" element of the first prong of the *Jane Doe A.* test is met. Nevertheless, the Court questions whether the authority *Jane Doe A.* relies upon supports its characterization of this element as independent from the claimant's burden of proving "reckless disregard" or "deliberate indifference." *See Wilson*, 801 F.2d at 322–23 (holding under the facts of that case that the claimant must demonstrate "deliberate indifference or tacit authorization *by failing* to take remedial steps following notice of a pattern of [the misconduct]" (emphasis added)). *Jane Doe A.* thus appears to heighten the burden of proof on section 1983 claimants alleging teacher against student sexual harassment without offering a theoretical justification as to why the standards in this context should differ from those in other contexts.

notice that Molkenthin engaged in a pattern of conduct that deprived her of her Title IX rights. The record reflects that many of the behaviors of which plaintiff accuses Molkenthin were not reported to Fish. Nevertheless, plaintiff's complaint to Fish about Molkenthin's repeated invitations to his home notified her of a pattern of behavior that does not constitute a series of "isolated incidents." [14] Importantly, plaintiff alleges that she told Fish the invitations were ongoing, and explicitly sought Fish's help in causing the behavior to stop. Assuming plaintiff's allegations to be true, Fish thus had notice of a pattern of conduct that violated her right to be free from teacher against student harassment under Title IX. As argued above, Fish did nothing in response to plaintiff's complaint, and plaintiff raises a fact issue as to whether Fish acted with deliberate indifference. Furthermore, the Court finds that Fish's failure to protect plaintiff likely contributed to her inability to tolerate the environment at the MALC, and therefore, may have been a proximate cause of the alleged deprivation of her Title IX rights. For these reasons, the Court cannot dismiss plaintiff's section 1983 Title IX claim against defendant Fish on summary judgment.

■ The Court finds no evidence in the record that Beddow responded to Molkenthin's harassment of plaintiff with deliberate indifference to or tacit authorization of his behavior. Plaintiff did not notify Beddow of Molkenthin's behavior and has not alleged that he otherwise had actual knowledge of it. Moreover, Molkenthin's conduct was not so pervasive that Beddow, through periodic visits to the school grounds in the regular course of his duties, should have become aware of it. Because plaintiff has not demonstrated that defendant Beddow either knew or should have

known about Molkenthin's sexual overtures towards her, she cannot prove that he responded to her complaints with deliberate indifference, reckless disregard, or tacit authorization. Her claims against him therefore fail under both the more burdensome test established in *Jane Doe A.* and the less burdensome test established in *Howard.*

## VII. Equal Protection

In addition to her Title IX claims, plaintiff brings claims against all defendants under section 1983 for alleged violations of the Equal Protection Clause. Plaintiff bases these charges on the same factual allegations supporting her Title IX claims, namely, sexual harassment by her peers and sexual harassment by defendant Molkenthin.

### A. Student against student sexual harassment

■ Plaintiff seeks to hold the WCED and ISDs liable under the Equal Protection Clause for their failure to respond to sexual harassment by several male students at the MALC, and for their failure to properly train the MALC staff on how to discipline the students. Plaintiff also seeks to hold the individual defendants liable for their failure to discipline her peers. Defendants argue that student against student sexual harassment claims are not cognizable under section 1983.

Although the broad language of Title IX supports a finding that student against student harassment is actionable under the statute,[15] the Equal Protection Clause is not similarly supportive of plaintiff's claims. Unlike Title IX, the text of the Equal Protection Clause restricts its force to state actors. U.S. Const. amend. XIV,

---

14. Plaintiff's simultaneous complaint about Molkenthin's "sexiest boy" comment, and her general concern that "he does things and I didn't want to be around him any more," should have demonstrated to Fish the possibility that his invitations were sexually charged.

15. Without naming an actor, Title IX states in passive voice that no person on the basis of sex shall "be excluded from," "denied the benefits of," or "subjected to discrimination under" any education program receiving federal funds. 20 U.S.C. § 1681.

§ 1 ("No State shall ... deny to any person within its jurisdiction the equal protection of the laws.").

Moreover, the Supreme Court established the general principal in *DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that a state's failure to protect an individual from private actors does not give rise to a constitutional violation unless a special relationship between the state and the claimant exists that creates a constitutional duty to protect. Addressing the due process claims raised in *DeShaney,* the Court argued that the Due Process Clause is merely a limitation on government action, and that neither its text nor history imposes upon the government an affirmative duty to act. *See id.* at 196–97, 109 S.Ct. 998. Relying on *DeShaney,* the Eighth Circuit held in *Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d 729 (8th Cir.1993), that a student's claim against a school district based on sexual assault by another student was not actionable under section 1983. The court rejected the claimant's argument that the school district's custodial relationship with him gave rise to a constitutional duty to protect him. *See id.* at 732 (holding that, "[a] constitutional duty of care arises only 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'" (citing *DeShaney,* 489 U.S. at 200, 109 S.Ct. 998)).

■ Although both *Dorothy J.* and *De-Shaney* decided section 1983 claims under the Due Process Clause, the rationale underpinning those cases applies to the equal protection claim at issue here. While the Equal Protection Clause limits the government's authority to deny services based on an individual's protected status, it does not require the government to prevent private actors from discriminating on that basis. *See Ricketts v. City of Columbia,* 36 F.3d 775, 779 (8th Cir.1994). In light of these precedents, the Court holds that plaintiff's section 1983 equal protection claims based on sexual harassment by her peers are not cognizable, because neither the school district nor its officials had an affirmative constitutional duty to protect her. Plaintiff's claims against defendants for failure to discipline her peers and her claims against the institutional defendants for failure to train MALC staff to properly execute such discipline are accordingly dismissed.

### B. Teacher against student sexual harassment

■ Because Molkenthin is a state actor, the *DeShaney* rule does not bar plaintiff's equal protection claims against defendants based on teacher against student sexual harassment. Plaintiff therefore states a viable equal protection claim if she can demonstrate that Molkenthin, acting under color of state law, deprived her of her rights under the Equal Protection Clause. As previously argued, Molkenthin was acting under color of state law at the time he allegedly committed the conduct in question.

Molkenthin nonetheless contends that his actions did not effect a deprivation of plaintiff's constitutional rights. Courts uniformly recognize that sexual harassment by a state actor violates the constitutional rights of the recipient under the Equal Protection Clause. *See, e.g., Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 550 (5th Cir.1997); *Whitney v. New Mexico,* 113 F.3d 1170, 1174 (10th Cir.1997); *Kern v. City of Rochester,* 93 F.3d 38, 43 (2nd Cir.1996); *Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994); *Bator v. Hawaii,* 39 F.3d 1021, 1027 (9th Cir.1994); *Pontarelli v. Stone,* 930 F.2d 104, 113–14 (1st Cir.1991); *Trautvetter v. Quick,* 916 F.2d 1140, 1149–50 (7th Cir. 1990) (citing *Bohen v. City of East Chicago,* 799 F.2d 1180, 1185 (7th Cir.1986)); *Jones v. Clinton,* 974 F.Supp. 712 (E.D.Ark.1997). As argued above, Molkenthin's alleged conduct was sufficiently severe and sexually charged, given his sta-

tus as plaintiff's teacher, to constitute sexual harassment. Assuming plaintiff's allegations to be true, a reasonable jury could infer from his conduct that Molkenthin intentionally discriminated against plaintiff on the basis of sex in violation of the Equal Protection Clause.

■ Molkenthin further argues that, even if plaintiff states a cognizable claim, the Court should dismiss it under the doctrine of qualified immunity. Molkenthin cannot successfully claim qualified immunity if his alleged conduct violated "clearly established ... constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. Long before the events giving rise to plaintiff's claims occurred, the Eighth Circuit held that, "[t]he right to be free from invidious discrimination on the basis of sex is clearly established, and no one who does not know about it can be called 'reasonable' in contemplation of the law." *Goodwin v. Circuit Court,* 729 F.2d 541, 545 (8th Cir.1984). No binding authority in this circuit explicitly has addressed whether teacher against student sexual harassment is actionable under the Equal Protection Clause. Nevertheless, school officials should have become aware that such harassment constitutes intentional sex discrimination when the Supreme Court decided *Meritor,* 477 U.S. 57 at 73, 106 S.Ct. 2399, (recognizing in 1986 that sexual harassment is a form of discrimination actionable under Title VII), and *Franklin,* 112 S.Ct. at 1037 (holding in 1992 that teacher against student sexual harassment is intentional discrimination in violation of Title IX). *Cf. Bator,* 39 F.3d at 1027–29 (holding in the Ninth Circuit that sexual harassment occurring in the 1980s violated clearly established equal protection rights, even though the courts in that circuit did not explicitly recognize that such claims were cognizable until 1991). Based on these precedents, the Court finds that Molkenthin had fair warning that sexually harassing a student would violate her statutory and constitutional rights, and therefore, he is not entitled to qualified immunity. Molkenthin's motion for summary judgment against plaintiff's equal protection claim is therefore denied.

### 1. Institutional liability for teacher against student harassment

■ Proof of plaintiff's claim against Molkenthin does not lead automatically to a finding of liability against the WCED and the ISDs. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that the doctrine of respondeat superior is inapplicable to section 1983 claims against government entities). *Monell* held that government liability under section 1983 arises only upon a showing that the alleged unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers ... [or is] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decisionmaking channels." *Id. Monell* defines "custom" as the "practices of state officials so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. 2018. Cases following *Monell* recognize that a single act or decision by a final policy-making official also may constitute "policy" and impose government liability in some circumstances. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

Citing *Monell, Thelma D. v. Board of Educ.,* 934 F.2d 929, 932–33 (8th Cir.1991), explicitly established the elements of proof necessary for a finding of governmental liability under section 1983 in the context of teacher against student harassment. Recognizing that an official school policy of permitting sexual harassment against students would be rare indeed, the court addressed the circumstances under which a student may establish the existence of a custom of failing to investigate and act

upon sexual harassment complaints. *Id.* The court held that a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Id.* Although *Thelma D.* applied a requirement of actual knowledge on the part of school district officials in that case, it suggested that in future cases evidence of a practice of avoiding such knowledge would be sufficient to impose liability. *See id.* at 936 ("[I]n the future a defense of no liability due to lack of knowledge may no longer apply to a bureaucracy which continues to block notice to the Board of allegations of sexual abuse ....").

Applying the test articulated in *Thelma D.* to the facts of this case, the Court finds that plaintiff has not met the prerequisites for imposing governmental liability under section 1983 on the school districts. Evaluating plaintiff's allegations broadly, they support a finding that WCED employees engaged in a continuing, widespread, persistent pattern of unconstitutional misconduct. She alleges not only that Molkenthin sexually harassed her on numerous occasions within a period of several months, but also that Fish herself had sexual intercourse with at least two MALC students. Given the small number of faculty at the MALC, the repeated acts of these two officials arguably constitute a pattern of teachers sexually harassing students that was "persistent" and "widespread."

Nevertheless, plaintiff offers no evidence that WCED's policymaking officials had notice of this misconduct or that they responded to it with deliberate indifference. The WCED's written sexual harassment policy during the relevant period set forth explicit procedures for reporting complaints, and named the officials responsible for investigating complaints and reporting such investigations to the WCED's board of directors. The acting principal, defendant Fish, was the official with primary responsibility for receiving both verbal and written reports of sexual harassment at the MALC. The policy required Fish to notify defendant Beddow immediately of all sexual harassment reports "without screening or investigating the report." Under the policy's terms, failure to forward complaints to Beddow could result in disciplinary action against Fish. Beddow had the responsibility of conducting an investigation and issuing a report to the board for a determination of appropriate remedies.

As these terms make clear, Fish had a mandatory responsibility to act upon all complaints, but was not a final policymaking official with regard to sexual harassment at the WCED. For this reason, Fish's knowledge about Molkenthin's harassment does not constitute notice to the WCED's policymaking officials that the harassment was occurring. Plaintiff does not allege that defendant Beddow or any other member of the WCED or ISD school boards knew about the events giving rise to her complaint. Their failure to remedy Molkenthin's unconstitutional conduct therefore did not constitute deliberate indifference to or tacit authorization of that behavior.

Moreover, the evidence does not suggest that the WCED's hierarchy insulated its board members from sexual harassment complaints. Under the explicit terms of the policy, Fish had a mandatory obligation to forward reports of harassment to Beddow and the board could discipline her for failing to do so. The district thus not only discouraged practices that would insulate its policymakers, it punished such

practices. Furthermore, plaintiff has not demonstrated that a district policymaker directly discouraged Fish from reporting sexual harassment complaints against teachers.[16] Fish's failure to report plaintiff's complaint, therefore, was not a practice "so permanent and well-settled as to [have] the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. Plaintiff has thus failed to demonstrate the existence of an unconstitutional custom attributable to the school districts. Finding no evidence of a policy, custom, or policymaker's decision that would support imposing governmental liability, the Court dismisses plaintiff's teacher against student harassment claims against the school districts under section 1983.

### 2. Supervisory liability for teacher against student harassment

■■■■ Plaintiff's section 1983 claims against Beddow and Fish under the Equal Protection Clause are governed by the same considerations determining her section 1983 claims against them under Title IX. As argued above, her claim against Beddow fails under the test articulated in *Jane Doe A.* because she has not proffered evidence showing that Beddow acted with deliberate indifference to, reckless disregard for, or tacit authorization of Molkenthin's conduct. She has nonetheless raised a genuine issue of material fact as to whether Fish had notice of Molkenthin's misconduct and responded to it with deliberate indifference to her rights under the Equal Protection Clause. She therefore states a cognizable equal protection claim against Fish for failure to properly supervise Molkenthin. Furthermore, any defense Fish asserts on the ground of qualified immunity fails because, as argued above, plaintiff had a clearly established constitutional right under the Equal Protection Clause to be free from sexual harassment by a teacher. Plaintiff's claim

survives Fish's motion for summary judgment for these reasons.

### VIII. Plaintiff's First Amendment Claims

■■■■ Plaintiff charges defendants with chilling her rights under the Free Speech and Petition Clauses of the First Amendment by discouraging her sexual harassment complaints. She asserts these claims with no evidence whatsoever that any WCED employee ever punished her, threatened her, retaliated against her, or otherwise affirmatively tried to prevent her from making such complaints. Instead, plaintiff argues that by tolerating sexual harassment school officials stifled her willingness to report it. She asserts on that basis that defendants' actions constituted prior restraint of protected speech.

Plaintiff's novel theory has no support in the case law. In order to state a claim under the First Amendment, plaintiff must demonstrate that school district officials committed an act or made a decision "abridging the freedom of speech ... and to petition the Government for a redress of grievances." U.S. Const. amend. 1. She therefore must demonstrate that her rights were somehow abridged.

Plaintiff cites *Hawkins v. Hennepin Technical Center*, 900 F.2d 153, 156 (8th Cir.1990), for the proposition that "an atmosphere of condoned sexual harassment increases the likelihood of retaliation for complaints in individual cases." She thus implies that by allowing harassment to continue, the school district threatened plaintiff with retaliation for reporting it and thereby abridged her speech. Plaintiff's citation to *Hawkins* is out of context. In *Hawkins*, the court addressed whether evidence of sexual harassment was admis-

---

**16.** Plaintiff argues that Beddow insulated himself from knowledge of student disciplinary problems by instructing MALC staff members to report complaints about such problems to Fish and not directly to him.

Assuming this allegation to be true, plaintiff points to no evidence of a similar reluctance on the part of Beddow to accept and investigate reports of employee misconduct.

sible to support an inference that past retaliation had occurred. *See id.* The court did not suggest, as plaintiff does, that the harassment itself was a deterrent to future complaints.

■ If adopted by the courts, plaintiff's theory would lead to the ludicrous result that a First Amendment violation occurs every time the government refuses to grant a petitioner's request, because such rejection might discourage the petitioner from making future requests. The First Amendment limits the government's authority to restrain protected speech, but it does not impose upon the government an affirmative duty to adopt and act upon every speaker's position. *Cf. DeShaney,* 489 U.S. at 196–97, 109 S.Ct. 998 (holding that the Due Process Clause is merely a limitation and does not impose upon the government an obligation to act). Plaintiff's failure to demonstrate that school district officials in any way punished her for making past complaints or threatened to punish her for making future complaints fatally damages her First Amendment claims against the defendants.

## IX. Plaintiff's Conspiracy Claims

■ Plaintiff alleges that defendants conspired to violate her equal protection rights in violation of 42 U.S.C. § 1985(3) and failed to prevent such conspiracy in violation of 42 U.S.C. § 1986. Plaintiff specifically alleges that Beddow, Fish and Molkenthin agreed to discourage plaintiff's complaints and to protect each other by failing to generate negative reports about each other.

A successful claimant under 42 U.S.C. § 1985(3) must prove:

(1) that the defendants did 'conspire,' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws,' (3) that one or more of the conspirators did, or caused to be done, 'any act in furtherance of the object of the conspiracy,' and (4) that an-

other person was 'injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.'

*Larson,* 76 F.3d at 1454 (citing 42 U.S.C. § 1985(3)). The Eighth Circuit has stressed that "[T]he 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'" *City of Omaha Employees Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 651 (8th Cir.1989) (citations omitted) (alteration in the original). A claimant therefore cannot meet her burden of proof by simply pointing to an agreement between the parties, rather, the agreement must be motivated by sex-based discriminatory intent. The court further held that, "the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. She can satisfy this burden by 'point[ing] to at least some facts which would suggest that appellees "reached an understanding" to violate [her] rights.'" *Id.*

Plaintiff cites as evidence of an agreement her deposition testimony in which she recalls that Klasen told her "[t]hat all of them [Beddow, Fish, and Molkenthin] had things they weren't supposed to do, they were willing to protect themselves and each other." She further recalls Klasen telling her on several occasions that they agreed "[N]ot [to] tell on each other." The only other evidence of an agreement plaintiff proffers is the fact that Beddow, Fish, Molkenthin and Klasen all responded to her complaints about the students by telling her that they could do nothing about it.

The admissibility of plaintiff's testimony about her conversations with Klasen is questionable. She does not aver that Klasen had first-hand knowledge about this alleged agreement, nor indicate from what source Klasen obtained the information. Furthermore, even assuming all of plaintiff's allegations to be admissible, her con-

spiracy claim suffers from a lack of sufficient evidence. Although plaintiff alleges that the individual defendants reached an agreement "[n]ot [to] tell on each other," she proffers no evidence linking this agreement with an intent to deprive her of her rights. One might infer from the evidence that the individual defendants intended generally to coverup their misconduct. Nevertheless, the particular facts alleged do not support an inference that they intended to cover up sexual harassment specifically, or to otherwise discriminate against plaintiff or women in general. Because plaintiff has alleged no facts that reasonably support an inference of class-based discriminatory animus, her conspiracy claims fail as a matter of law.

## X. Punitive Damages

Plaintiff's complaint states a request for punitive damages from all defendants under her Title IX, section 1983, and conspiracy claims. Defendants contest plaintiff's punitive damages claims on the ground that plaintiff did not properly plead them. Defendants argue that plaintiff failed to comply with a Minnesota law that prohibits a plaintiff from initially claiming punitive damages, and instead requires the plaintiff to move to amend the complaint and add a claim for such damages after filing and serving it on the defendant. Minn.Stat. § 549.191. Although federal courts have held Minn.Stat. § 549.191 to be applicable in diversity cases, see *Engele v. Independent Sch. Dist.*, 846 F.Supp. 760, 767 (D.Minn.1994), defendants cite no authority for applying Minn.Stat. § 549.191 to federal question claims decided in federal court. Defendants concede that the claims for which plaintiff seeks punitive damages are grounded in the court's federal question jurisdiction. Minnesota state law neither substantively nor procedurally governs the determination of these claims, and the Court cannot justify applying state law to them simply because this case is venued in Minnesota. Defendants' motion to dismiss plaintiff's claim for punitive damages

based on her failure to follow the state statute is therefore denied.

Defendants further argue that plaintiff's punitive damages claim against them fails for lack of evidence of the requisite level of intent necessary to impose such damages. Under *Smith v. Wade*, 461 U.S. 30, 55–56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." In permitting plaintiff's section 1983 and Title IX claims against Molkenthin to proceed, this Court determined that a reasonable jury could find that he acted towards plaintiff with an intent to discriminate on the basis of sex. Likewise, the Court determined that plaintiff has raised a genuine issue of material fact as to whether Fish responded to her complaints with deliberate indifference to or reckless disregard for her constitutional rights. The Court thus already has determined that plaintiff's showing of intent with respect to these defendants is sufficient. Because the Court dismisses plaintiff's primary claims against defendant Beddow, her claim against him for punitive damages is also dismissed.

Plaintiff additionally states a claim for punitive damages against the institutional defendants. Under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), government entities are immune from punitive damages claims under section 1983. Punitive damages are therefore unavailable for plaintiff's equal protection claim against the institutional defendants under section 1983.

Plaintiff nonetheless argues that punitive damages are available to her under her Title IX claim against the institutional defendants. The few courts directly to address this issue have held that punitive damages are not applicable against government entities under Title IX. *See*

*Crawford v. School Dist.,* 1998 WL 288288, at *2 (E.D.Pa.1998); *Collier v. William Penn Sch. Dist.,* 956 F.Supp. 1209, 1217 (E.D.Pa.1997); *Doe v. Londonderry Sch. Dist.,* 970 F.Supp. 64, 76 (D.N.H.1997); *cf. Doe v. Oyster River Coop. Sch. Dist.,* 992 F.Supp. 467, 482–84 (D.N.H.1997) (arguing both sides of the issue without deciding it). These cases note that the Court in *Newport* based its decision on the existence of a longstanding common law rule immunizing municipalities from punitive damages. *See Newport,* 453 U.S. at 258, 101 S.Ct. 2748. Presuming that Congress was aware of this rule when it enacted section 1983, *Newport* held that courts should refrain from imposing punitive damages against municipalities absent express statutory authority to the contrary. *See id.* at 263–64, 101 S.Ct. 2748. The rationale underlying *Newport* is equally applicable to punitive damages awards against school districts under Title IX. For these reasons, the Court dismisses plaintiff's claim for punitive damages against the WCED and the ISDs.

## XI. State Law Negligence Claims

Plaintiff's complaint asserts claims against the defendants under Minnesota common law for negligence and negligent infliction of emotional distress. Although defendants moved for summary judgment against these claims, plaintiff did not argue these claims in her responsive memoranda and has apparently abandoned them. Because plaintiff has not raised genuine issues of material fact with regard to these claims, defendants' motion for summary judgment against them is granted.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment of defendants ISD 745, ISD 740, ISD 741, ISD 743, WCED and Jerome Beddow [Docket No. 112] is **GRANTED** in part and **DENIED** in part.

2. Defendant James Molkenthin's motion for summary judgment [Docket No. 103] is **GRANTED** in part and **DENIED** in part.

3. Defendant Betsy Fish's amended motion for summary judgment [Docket No. 108] is **GRANTED** in part and **DENIED** in part.

4. Plaintiff's motion to amend complaint [Docket No. 126] is **GRANTED.**

5. Plaintiff's claims under Count I of the Complaint (Title IX) against defendants Jerome Beddow, James Molkenthin, and Betsy Fish are **dismissed with prejudice.**

6. Plaintiff's claims against defendant Jerome Beddow under the Complaint, as amended by this Order granting plaintiff's motion to amend complaint (42 U.S.C. § 1983—Title IX), are **dismissed with prejudice.**

7. Plaintiff's claims against defendants Betsy Fish and James Molkenthin under the Complaint, as amended by this Order granting plaintiff's motion to amend complaint (42 U.S.C. § 1983—Title IX), to the extent based on student against student sexual harassment, are **dismissed with prejudice.**

8. Plaintiff's claims against all defendants under Count II of the Complaint for Due Process Clause violations (42 U.S.C. § 1983—Due Process) are **dismissed with prejudice.**

9. Plaintiff's claims against all defendants under Count II of the Complaint for Equal Protection Clause violations (42 U.S.C. § 1983—Equal Protection), to the extent based on student against student sexual harassment, are **dismissed with prejudice.**

10. Plaintiff's claims against defendants ISD 745, ISD 740, ISD 741, ISD 743, WCED and Jerome Beddow under Count II of the Complaint for Equal Protection Clause violations (42 U.S.C. § 1983— Equal Protection), to the extent based on

teacher against student sexual harassment, are **dismissed with prejudice.**

11. Plaintiff's claims against all defendants under Count II of the Complaint for First Amendment violations (42 U.S.C. § 1983—First Amendment) are **dismissed, with prejudice.**

12. Plaintiff's claims against all defendants under Count III of the Complaint (42 U.S.C. §§ 1985(3), 1986—Conspiracy) are **dismissed with prejudice.**

13. Plaintiff's claims against all defendants under Count IV of the Complaint (Negligence) are **dismissed with prejudice.**

14. Plaintiff's claims against all defendants under Count V of the Complaint (Negligent Infliction of Emotional Distress) are **dismissed with prejudice.**

15. Plaintiff's claims against defendants ISD 745, ISD 740, ISD 741, ISD 743, WCED and Jerome Beddow under Count VI of the Complaint (Punitive Damages) are **dismissed with prejudice.**

16. The summary judgment motion of defendants ISD 745, ISD 740, ISD 741, ISD 743, and WCED to dismiss Count I of the Complaint (Title IX), based on both student against student sexual harassment and teacher against student sexual harassment, is **denied.**

17. The summary judgment motions of Betsy Fish and James Molkenthin to dismiss plaintiff's claims under the Complaint, as amended by this Order granting plaintiff's motion to amend complaint (42 U.S.C. § 1983—Title IX), to the extent based on teacher against student sexual harassment, are **denied.**

18. The summary judgment motions of Betsy Fish and James Molkenthin to dismiss Count II of the Complaint for Equal Protection Clause violations (42 U.S.C. § 1983—Equal Protection), to the extent based on teacher against student sexual harassment, are **denied.**

19. The summary judgment motions of Betsy Fish and James Molkenthin to dis-

miss Count VI of the Complaint (Punitive Damages) are **denied.**

20. Plaintiff shall have 30 days from the date of this Order to file an Amended Complaint to include claims against defendants Jerome Beddow, James Molkenthin, and Betsy Fish under 42 U.S.C. § 1983 for alleged violations of Title IX as set forth herein.