**Victor ROBERTS, Plaintiff,**

v.

**ALAN RITCHEY, INC., Defendant.**

No. C–1–96–934.

United States District Court, S.D. Ohio, Western Division.

April 17, 1997.

Joanne J. Ervin, Dayton, OH, for Victor Roberts.

Brian Paul Gillan, Robert J. Reid, Dinsmore & Shohl, Cincinnati, OH, for Alan Ritchey, Inc.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Dismiss (doc. 3), Plaintiff's Response (doc. 4) and Defendant's Reply (doc. 5).

## BACKGROUND

Plaintiff, Victor Roberts, filed this lawsuit on September 23, 1996, against his former employer, Alan Ritchey, Incorporated ("ARI"). In his complaint, Mr. Roberts alleges three causes of action: (1) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), (2) handicap discrimination in violation of O.R.C. §§ 4112.02(A) and 4112.99, and (3) wrongful discharge in viola-

tion of Ohio public policy. ARI has now moved to dismiss Count Three, wrongful discharge in violation of Ohio public policy, for failure to state a claim.

Mr. Roberts was employed by ARI as a truck driver from 1987 until on or about January 26, 1995. In September 1994, Mr. Roberts was arrested for driving under the influence ("DUI"), weaving and failure to produce an insurance card. Mr. Roberts did not report the incident to his employer. However, a co-worker of Mr. Roberts informed ARI of his arrest in January 1995. ARI then terminated Mr. Roberts for being arrested for DUI and failing to report his arrest to them.

Mr. Roberts was later acquitted on all charges. Mr. Roberts filed this action asserting wrongful discharge. Mr. Roberts claims that he was discharged solely because he had been charged with the DUI and other offenses. He further contends that his failure to report the arrests did not violate company policy as he understood it, because a supervisor had told him, six years earlier, that he should only report violations which would appear on a motor vehicle report. Mr. Roberts asserts that he knew that only convictions would appear on a motor vehicle report.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a), which states that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A Court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir.1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint.

*Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The admonishment to liberally construe plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (*quoting In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); Charles A. Wright, et al., *Federal Practice and Procedure*, § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit recently clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## DISCUSSION

■ Mr. Roberts argues that he was wrongfully terminated in violation of Ohio public policy when he was fired after being charged but later acquitted of several traffic violations including driving under the influence.

■ Traditionally, in Ohio an employee who is hired for an indefinite term is an employee at will, and either party may end the relationship for any reason, or for no reason, at any time. *Phung v. Waste Management, Inc.,* 23 Ohio St.3d 100, 102, 491 N.E.2d 1114 (1986). However, the Ohio Supreme Court now recognizes an exception to the employment-at-will doctrine for discharges in derogation of public policy. *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995); *Greeley v. Miami Valley Maintenance,* 49 Ohio St.3d 228, 234–35, 551 N.E.2d 981 (1990).

■ The Ohio Supreme Court identified four elements of the tort of discharge in derogation of public policy:

1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Id.* at 69–70, 652 N.E.2d 653 (quoting H. Perrit, The Future of Wrongful dismissal Claims: Where does Employer Self Interest Lie? 58 U.Cin.L.Rev. 397, 398–99 (1989) (emphasis in original)). In addition, the court noted that the clarity and jeopardy elements are questions of law for the court. *Id.*

Under the first prong, Mr. Roberts argues that two Ohio statutory sections evidence a public policy in Ohio protecting employees from an "adverse job action based upon un-warranted assumptions of quilt:" (Pl.'s Resp. at 5) (1) the presumption of innocence found in O.R.C. § 2901.05, and (2) the prohibition against discharging employees because of being subpoenaed to testify before a grand jury or a criminal proceeding under O.R.C. §§ 2939.121 and 2945.451.

We decline to decide whether Ohio law evidences a clear public policy against employers terminating an employee based upon the fact that the employee has been charged but not convicted of a crime. There is no need for the Court to make such a determination because it is clear from the factual situation presented in this case that ARI's decision to terminate Mr. Roberts would not violate such a policy if it did exist. We find that Mr. Roberts' discharge in this situation fails to meet the second and fourth prongs of the test laid out in *Collins.*

Under the second prong, the Court must determine whether the termination jeopardizes public policy. The fourth prong asks the court to consider whether the employer had a overriding legitimate business reason for the action. Here, we find that Mr. Roberts' termination here does not jeopardize any public policy of presumption of innocence. Furthermore, we find that ARI had an overriding legitimate business justification for terminating Mr. Roberts.

Mr. Roberts worked as a truck driver for ARI. In September 1994, he was arrested for DUI, weaving and failure to show proof of insurance. ARI placed Mr. Roberts on suspension immediately upon hearing of these charges and terminated him several days later.

■■ Under Ohio law, an arresting officer is empowered to immediately suspend the driver's license of a driver arrested for DUI who either refuses to take the designated chemical test or if upon taking the test fails it (*i.e.,* registers a blood-, breathe- or urine alcohol concentration above the statutory limit). O.R.C. § 4511.191(D)(1)(a); *see also Ohio v. Gustafson,* 76 Ohio St.3d 425, 431, 668 N.E.2d 435 (1996). An officer may only ask a driver to take a chemical test *"where the officer has first determined that probable cause exists for an arrest for the offense of driving while intoxicated." Id.* at

439, 668 N.E.2d 435 (emphasis in original). Thus, upon a sufficient showing, Ohio allows for immediate suspension of driving privileges for a person accused of DUI.

 ARI's decision to suspend and then terminate Mr. Roberts upon discovering his arrest for DUI would therefore simply not jeopardize any public policy against presumption of innocence. The immediate administrative license suspension is considered a remedial measure designed to protect the public from drunk drivers. *Id.* at 440, 668 N.E.2d 435. Certainly, if Ohio is entitled to take such action, ARI would not be jeopardizing public policy by suspending or terminating a truck driver for similar reasons.

ARI also has overriding legitimate business justifications for taking the action. As a trucking company, ARI must ensure that it employs safe and conscientious drivers in order to reduce the risk of liability and prevent harm to its business reputation. *See Cisco v. United Parcel Services, Inc.,* 328 Pa.Super. 300, 476 A.2d 1340, 1344 (1984) (finding that the reputation and business activity of employer may be threatened by mere arrest of an employee even if it resulted in an acquittal). Certainly, ARI's business could be harmed if the general public or its customers found out that ARI employed a truck driver who was arrested for driving under the influence. *See id.* (stating that full rights of criminally accused cannot be imposed upon private companies where for "legitimate business reasons, [an employer] cannot risk even someone under suspicion of having committed theft ... when the nature of its business is to enter onto the premises of others and to deliver parcels....."). Accordingly, we find that ARI did not violate any public policy by terminating a truck driver who was arrested for DUI even though he was later acquitted of the charges.

## CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count Three.

SO ORDERED.