Deetroy OLDHAM, a Minor, Through his Mother and Next Friend, Stephanie YOUNG, Plaintiff,

v.

CINCINNATI PUBLIC SCHOOLS, et al., Defendants.

No. C–1–00–433.

United States District Court, S.D. Ohio, Western Division.

Oct. 24, 2000.

Robert Forsythe Croskery, Croskery & Associates Co LPA, West Chester, OH, Melinda Weissenberger, West Chester, OH, for plaintiffs.

Ian R Smith, McCaslin, Imbus & McCaslin—1, Cincinnati, OH, Ralph Gary Winters, McCaslin Imbus & McCaslin, Cincinnati, OH, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion to Dismiss (doc. 3); Plaintiff's Response (doc. 4); and Defendants' Reply (doc. 5). In addition, the Court held a Preliminary Pretrial Conference in this matter on October 19, 2000 (*see* doc. 6).

## BACKGROUND

Plaintiff Deetroy Oldham, a minor, who was born on October 20, 1984, is the son of Stephanie Young (hereinafter, "Plaintiff"), who is his legal custodian and who brings this lawsuit as his next friend and as his mother, filed this action against Defendants Cincinnati Public Schools and Steven Adamowski, in his official capacity as Superintendent of the Cincinnati Public Schools (hereinafter, "Defendants") for violations of the Equal Protection Clause of the Fourteenth Amendment of the United

States Constitution,[1] pursuant to Title 42 U.S.C. § 1983 (doc. 1). That Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

This Court has federal question jurisdiction, pursuant to Title 28 U.S.C. § 1331, over Count One of the Complaint (*see id.*). In addition, this Court may properly exercise its supplemental jurisdiction, pursuant to Title 28 U.S.C. § 1367, over Court Two of the Complaint, as this claim is so related to the federal claim that it forms part of the same case or controversy under Article III of the United States Constitution (*Id.*). *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The following short recitation of the facts, though disputed by Defendants, are taken from Plaintiff's Complaint (*see* doc. 1).

On or about May 12, 1999, Plaintiff Deetroy Oldham went to school at North Fairmount School, which is located within the Cincinnati Public Schools. Plaintiff was wearing red clothing. Upon Plaintiff's arrival at school, Plaintiff was threatened by another student by the name of ... [hereinafter, referred to as "TT"] because he was wearing red clothes. Plaintiff properly reported this threat to his teacher Mr. Dodds and to the assistant principal, David Knox. Plaintiff's teacher, Mr. Dodds, heard TT threaten Deetroy Oldham. Plaintiff's teacher heard about the threat, was made aware of the threat[;] one other teacher, Mr. Franklin and the principal were also aware of the threat. Specifically, the teachers and principal heard TT tell Deetroy Oldham "I will get you at lunch." At lunch, TT initially pushed Plaintiff Deetroy Oldham. One of Plaintiff's teachers told Plaintiff that if TT did hit him, "you can hit him back."

After stating that, the teacher walked away.

TT then assaulted Plaintiff, hitting him in the face. It was immediately evident that Plaintiff was severely injured. The principal did not call the paramedics, nor did he take any action to take care of the situation, but rather had a security officer take Deetroy Oldham home. Plaintiff was taken to the emergency room by his mother Stephanie Young, and was determined to be almost completely blinded in his right eye. Similar incidents have occurred at North Fairmount School, and the school has had problems with the staff and the principal, including every day fights, milk throwing, students bringing knives to school, and other incidents of students not [being] supervised properly. The students who attend North Fairmount School are primarily people of color, and the school has had consistent problems associated with the School District's failing to recognize and deal with the minority students in the same manner that it deals [with the] majority population in other schools.

(doc. 1).

On May 31, 2000, Plaintiff Deetroy Oldham, a minor, through his mother, filed this civil rights action against Defendants (*Id.*). *See* 42 U.S.C. § 1983. In the Complaint, Plaintiff asserts two causes of action against Defendants. Plaintiff's first cause of action alleges that Defendants violated Plaintiff's right to equal protection under the Fourteenth Amendment and is asserted as a civil rights action under 42 U.S.C. § 1983.

Specifically, Plaintiff alleges that, "[t]he failure of [Defendants] to properly provide a safe education and to treat [Plaintiff] equally with other persons not of minority heritage amounts to a violation of the Fourteenth Amendment ..." (doc. 1). The second cause of action is for the negli-

---

1. As explained later, the Court will construe this claim based upon Plaintiff's right to substantive due process, as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution (i.e., the equal protection claim).

gent hiring and supervision of the staff and principal of North Fairmount School, which, according to the Complaint, was a "direct and proximate cause of the injury" to Plaintiff's eye (*Id.*).

Instead of filing an Answer to Plaintiff's Complaint, Defendants submitted a Motion to Dismiss on July 31, 2000, moving this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 3). Shortly thereafter, Plaintiff submitted his Response and moved for this Court to allow him to amend his Complaint in order to add as additional Defendants the principal and teachers involved in the aforementioned incidents (doc. 4).

However, Plaintiff fails to identify by name or by official/individual capacity the teachers and school principal that he wishes to add to the Complaint, nor does he attach a proposed Amended Complaint to his Response (*see id.*). *See also* Fed. R.Civ.P. 15(a).

Having reviewed this matter, the Court has decided to address Plaintiff's motion to amend at the end of this Order in order to determine if Plaintiff's motion to amend is possibly moot due to Defendant's Motion to Dismiss.

On September 1, 2000, Defendants filed their Reply in which they did not object to Plaintiff's motion to amend his Complaint (doc. 5). Accordingly, this matter is now considered ripe for the Court's determination.

### STANDARD OF REVIEW FOR A MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "requires the Court to determine whether a cognizable claim has been pleaded in the complaint." *Roberts v. Alan Ritchey, Inc.*, 962 F.Supp. 1028, 1030 (S.D.Ohio 1997). In making this inquiry, the Court must view the motion in a light most favorable to the party opposing it. *See Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983). In other words, a court must accept as true all of the allegations in the well-pleaded complaint that is under attack. *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). The Court may then grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a), which states that, a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir.1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Jones*, 827 F.2d at 1103.

The admonishment to liberally construe the plaintiff's claim when evaluating a Rule

12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. 5A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting *In Re: Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); 5 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988).

## DISCUSSION

### A. *Introduction*

The Equal Protection Clause requires that public institutions, such as North Fairmount School, "treat similarly situated individuals in a similar manner." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir.1996). In order to demonstrate a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitu-

tion, a plaintiff must allege and prove "the existence of purposeful discrimination." *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). "A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination 'had a discriminatory effect on him.'" *Id.* (citations omitted).

■ The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Thus, the threshold element of an equal protection claim is disparate treatment. *Glover v. Williamsburg Local Sch. Dist. Bd. of Educ.*, 20 F.Supp.2d 1160, 1168 (S.D.Ohio 1998). "Once disparate treatment is shown, the legal standard for analyzing any equal protection claim depends upon the classification used by the government decision-makers." *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249.

■ Regardless of the level of constitutional scrutiny that courts apply to such claims, only intentional, purposeful discrimination violates the Equal Protection Clause. *See Washington v. Davis*, 426 U.S. 229, 243, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995). Specifically, a plaintiff must prove "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990) (citations omitted).

■ Even though the Due Process Clause does not generally impose affirmative duties upon the State to protect the individuals' interests, in certain situations, the Constitution does impose an affirmative duty of care and protection with respect to particular individuals. *See DeShaney v. Winnebago County Dep't of Soc.*

*Servs.*, 489 U.S. 189, 198, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). For example, in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court "recognized that the Eighth Amendment's prohibition against cruel and unusual punishment made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the States to provide adequate medical care to incarcerated prisoners." *Id.* Furthermore, this right was recognized because the prisoner is unable "by reason of the deprivation of his liberty to care for himself, [therefore], it is only just that the State be required to care for him." *DeShaney*, 489 U.S. at 200, 109 S.Ct. 998.

In this case, Plaintiff argues that Defendants had notice of his impending assault by another student, TT, and because of either the race of Plaintiff, the race of the student body, the race of TT or the race of the teaching staff, the assault was allowed to go forward without the intervention of the school's staff (doc. 1).

Plaintiff asserts his claim for equal protection under 42 U.S.C. § 1983. To make a claim for damages under 42 U.S.C. § 1983, a plaintiff needs to show (1) a deprivation of a federal right (2) committed by an individual acting under color of law. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120–21, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

The following section highlights the Parties' arguments (*see* docs. 3, 4 & 5).

## B. *The Parties' Arguments*

In their Motion to Dismiss, Defendants assert a number of arguments as to why Plaintiff's Complaint fails to state a claim upon which relief can be granted (doc. 3). First, Defendants allege that Plaintiff has not put forth sufficient facts in order to support an equal protection claim. For example, Defendants contend that Plaintiff has not alleged in his Complaint that Defendants have a policy or custom of offer-

ing more protection to non-minority students, which is required when asserting an equal protection claim. *See Williams v. City of Taylor*, 129 F.3d 1266, No. 95–2221, 1997 WL 720394, at *3 (6th Cir. Nov.10, 1997) (citing *Soto v. Flores*, 103 F.3d 1056, 1066 (1st Cir.1997)); *see also Ricketts v. City of Columbia*, 36 F.3d 775, 779 (8th Cir.1994). In addition, Defendants contend that Plaintiff fails to demonstrate that the supposed discrimination of Defendants against minority students was a motivating factor for the policy or custom, or that he was injured as a result of that policy or custom. *See id.*

Secondly, Defendants contend that, even if Plaintiff has alleged sufficient facts in his Complaint to maintain a civil rights claim, Defendants had no duty to protect Plaintiff from harm or provide him with a safe environment under the Equal Protection Clause. *See DeShaney*, 489 U.S. at 201, 109 S.Ct. 998; *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (1993). Specifically, Defendants counter that:

> [r]egardless whether plaintiff characterizes his claim as a due process claim or an equal protection claim, the duty envisioned by the plaintiff is the same. That is, plaintiff seeks to impose upon [Defendants] a duty to protect one of [their] students from another student. However, [Defendants do] not owe this duty to its students.

(doc. 3). *See DeShaney*, 489 U.S. at 201, 109 S.Ct. 998; *Dorothy J.*, 7 F.3d at 729; *Morlock v. West Cent. Educ. Dist.*, 46 F.Supp.2d 892, 918 (D.Minn.1999) ("[T]he Court holds that plaintiff's section 1983 equal protection claims based on sexual harassment by her peers are not cognizable, because neither the school district nor its officials had an affirmative constitutional duty to protect her.").

In his Response, Plaintiff argues that, even under the standard of *Williams v. City of Taylor*, his Complaint alleges a colorable claim under the Equal Protection Clause of the Fourteenth Amendment

(doc. 4). *Id.,* 129 F.3d 1266, 1997 WL 720394, at *3. Specifically, Plaintiff asserts that his Complaint demonstrates that it is the policy or custom of Defendants to provide less protection to minority students than for other non-minority students, "for the simple reason that the school was a minority school [that was] staffed with people that did not demonstrate full protection for Plaintiff" *(Id.).*

Moreover, Plaintiff contends that the active discrimination of minority students at North Fairmount, while treating favorably non-minority students at other schools, by the school's staff was a motivating factor for the policy or custom. Finally, Plaintiff argues that he "was injured as a result of the policy or custom" of the North Fairmount School, because had plaintiff been enrolled in a safer school with a non-minority population, the injury to his eye would not have occurred (Id.).

In its Reply, Defendants reassert that they had no constitutional duty to protect Plaintiff from an act of violence by a private party (doc. 5). *See Dorothy J.,* 7 F.3d at 732. Furthermore, Defendants maintain that the duty to protect a Plaintiff is not imposed upon a school board unless the surroundings are "analogous to a prison or prison-like environment." *Id.* Finally, Defendants argue that Plaintiff's allegation that school officials had some type of notice that TT was going to assault him does not change the constitutional duty owed to him by Defendants, and, therefore, Plaintiff's Complaint should be dismissed on the grounds of the failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

### C. *The Court's Analysis*

Plaintiff seeks to impose liability upon Defendants for an assault committed upon him by another student, TT, while on school grounds. Plaintiff alleges in his Complaint that school officials were aware that TT had threatened him and had seen TT push him (doc. 1). Thereafter, Plaintiff was allegedly severely injured as a result of being punched by Taylor *(Id.).* As an allegedly direct and proximate consequence of the aforementioned acts, Plaintiff has sued the Defendant school district and superintendent claiming that Defendants' actions were in violation of the Equal Protection Clause (i.e., Due Process Clause) of the Fourteenth Amendment. *See* 42 U.S.C. § 1983; *see also Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 505–506 (6th Cir.1996).

In addition to his equal protection claim, Plaintiff has filed a state law tort claim alleging that school officials acted recklessly and negligently to cause his injury to his eye by not preventing the assault inflicted by TT. *See* Ohio Rev.Code Ann. § 2744.01, *et seq.* .

■■ A local governmental entity may be held liable under 42 U.S.C. § 1983 for violations of federal law committed pursuant to a governmental policy or custom. *Monell v. Department of Soc. Servs. of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also* Ohio Rev.Code Ann. § 2744.01, *et seq.* Governmental officials may be held liable for damages under § 1983 based upon actions taken in their individual capacities. *Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). However, Defendant Adamowski is only sued in his official capacity as superintendent *(see* doc. 1).

■■ An official capacity suit against a municipal official is simply another way of asserting a claim against the municipality. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Defendant Cincinnati School Board is also a party to this suit. A political subdivision is liable only where the violation of constitutional rights stems from a governmental policy or custom. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The local government's policy or custom "must be the moving force of the constitutional violation in order to establish the liability of a governmental body under § 1983." *Polk County*

*v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

Thus, the only question before this Court is whether Plaintiff can prove a set of facts in support of his claims against both Defendants. In order to satisfy the *Monell* requirement, Plaintiff "must identify the policy at issue, connect the policy to the [governmental body], and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984)).

Having reviewed this matter, the Court finds Defendants' Motion to Dismiss to be well-taken, persuasive, and correct for the following reasons (*see* doc. 3).

The Due Process Clause protects against state action ("[n]o State shall ... deprive any person of life, liberty, or property, without due process of law"). Thus, Plaintiff's due process claim is that Defendants, as state actors, failed to protect Plaintiff from an assault by another private actor. Defendants argue that this claim falls within the scope of *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Defendants further argue that Plaintiff's substantive due process or equal protection theory was also implicitly rejected by the Supreme Court in *DeShaney*.

In *DeShaney*, the United States Supreme Court addressed the claims of a child who sustained injuries inflicted by his natural father after the defendant agency returned him to the father's custody. *Id.*, 489 U.S. at 190–91, 109 S.Ct. 998. The Supreme Court held that a governmental entity has no obligation under the Due Process Clause of the Fourteenth Amendment to protect citizens from the violent acts of private persons such as the child's father. *Id.* at 199–200, 109 S.Ct. 998; *see also Reed v. Knox County Dept. of Human Servs.*, 968 F.Supp. 1212, 1216 (S.D.Ohio 1997).

The Supreme Court went on to note that a duty to protect on the part of the State may arise where a "special relationship" exists between the individual and the State, such as in the case of prison inmates and persons confined to mental institutions. *Id.* at 198–200, 109 S.Ct. 998. However, such a relationship arises only where "the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Id.* at 200, 109 S.Ct. 998.

"The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it imposed on his freedom to act on his own behalf." *Id.; see also Foy v. City of Berea*, 58 F.3d 227, 231 (6th Cir.1995) (finding that the mere knowledge of danger to plaintiff does not create an affirmative duty to protect). "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraints of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause [and] not its failure to act to protect his liberty against harms inflicted by other means." *DeShaney*, 489 U.S. at 200, 109 S.Ct. 998.

The Supreme Court concluded that the harm suffered by the child occurred while he was in the custody of his father, not in the custody of the State, and that the State agency had no constitutional duty to protect the child even though it may have been aware of the dangers he faced. *DeShaney*, 489 U.S. at 200–201, 109 S.Ct. 998; *see also Reed*, 968 F.Supp. at 1216.

The Supreme Court in *DeShaney* further observed that the conduct of the agency may have lead to the creation of a duty on its part to protect the child against danger under state tort law. *DeShaney*,

489 U.S. at 202, 109 S.Ct. 998. However, the Court went on to note that the Due Process Clause of the Fourteenth Amendment "does not transform every tort committed by a state actor into a constitutional violation." *Id.* The Court found that because the agency had no constitutional duty to protect the child against his father's violence, the agency's failure to do so did not constitute a violation of the Due Process Clause. *Id.; see also Reed,* 968 F.Supp. at 1217.

■ This Court believes that the proper result in this case is, therefore, governed by the general rule of *DeShaney* in that, absent some special relationship between the State and the victim, such as when the State restrains the victim's freedom (i.e., prison, mental institution, etc.), the Due Process Clause does not impose liability for private acts of violence. *Id.,* 489 U.S. at 197, 109 S.Ct. 998. We, therefore, find the case of *DeShaney* stands for the general proposition that, although a State may not deprive an individual of life or liberty without due process of law, that same State does not have an affirmative obligation to protect an individual's life and liberty interests from harm through other means or by other private actors. *Id.* at 200, 109 S.Ct. 998; *Foy,* 58 F.3d at 231.

■ Although, clearly a school system has an unmistakable duty to create and maintain a safe environment for its students as a matter of common law, its *in loco parentis* status or a State's compulsory attendance laws do not sufficiently "restrain" students in a manner that would raise a school's common law obligation to the rank of a constitutional duty toward its students. *Claiborne County,* 103 F.3d at 510; *see also Sargi v. Kent City Bd. of Educ.,* 70 F.3d 907, 911 (6th Cir.1995) (holding that compulsory attendance laws do not create a "special relationship" between school districts and their students in order to give rise to an "affirmative duty" on the part of the school to protect its students while riding a school bus).

"The Due Process Clause, while serving as an essential vehicle to the vindication of a State's abridgement of fundamental aspects of life, liberty, and property, does not impose absolute constitutional liability on the State. Were this not the case, the most trivial of common law torts would rise to the level of a constitutional violation." *Claiborne County,* 103 F.3d at 510.

In the case at bar and accepting the allegations in the Complaint as true, as we must, the Court finds, as a matter of law, that the facts of this case does not show that a "special relationship" between Defendants and Plaintiff ever existed. *See Soper v. Hoben,* 195 F.3d 845, 852–53 (6th Cir.1999); *Gazette v. City of Pontiac,* 41 F.3d 1061, 1065 (6th Cir.1994). Furthermore, the Court finds it important to note that, the person who harmed Plaintiff was a private actor (i.e., TT) and not a governmental or school official acting under color of state law or pursuant to any stated governmental or school policies or customs. *Soper,* 195 F.3d at 853.

Because no "special relationship" existed between Deetroy Oldham, TT, the Cincinnati Public Schools and Superintendent Adamowski, the North Fairmount School's failure to protect Plaintiff does not give rise to a § 1983 or an equal protection claim. In other words, Defendants had no constitutional duty to protect Plaintiff under the facts as alleged in the Complaint. *See, DeShaney,* 489 U.S. at 200, 109 S.Ct. 998; *Dorothy J.,* 7 F.3d at 732; *see also Morlock,* 46 F.Supp.2d at 918 ("While the Equal Protection Clause limits the government's authority to deny services based on an individual's protected status, it does not require the government to prevent private actors from discriminating on that basis."). In addition, Plaintiff has failed to introduce any evidence which would establish the existence of any custom or policy implemented by Defendants condoning, promoting, or assisting in TT's assault upon Plaintiff. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

Therefore, the Court concludes, as we must, that the Complaint fails to plead sufficient facts in order to find that: (1) it is the policy or custom of Defendants to provide less protection to minority students than to other students; (2) discrimination against minority students was a motivating factor for the policy or custom; and (3) Plaintiff was injured as a result of the policy or custom of Defendants. *See Williams v. City of Taylor*, 1997 WL 720394, at *3 (citing *Soto v. Flores*, 103 F.3d at 1066); *see also Ricketts*, 36 F.3d at 779.

For example, Plaintiff has not asserted or referred the Court to which particular policy or custom of Defendants allegedly offers less protection to minority students and which particular policy or custom offers more protection to non-minority students. The record before us clearly indicates that Plaintiff has failed to allege sufficient facts to establish any of the three prongs of an equal protection claim. *See id.*

"The Due Process Clause is simply not implicated by a negligent act of an official causing unintended injury to life, liberty, or property." *Duvall v. Ford*, 187 F.3d 635, No. 98–5777, 1999 WL 486531, at *4 (6th Cir. July 1, 1999) (unpublished disposition) (citing *Daniels v. Williams*, 474 U.S. 327, 335–36, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986)). The Plaintiff's theory of this case may well contemplate the imposition of such duties by the Constitution upon Defendants, but the Supreme Court as indicated in *DeShaney* and *Monell*, has never authorized such a broad construction of constitutional duties and deprivations.

Rather, in *DeShaney*, the Court held that, "[a]s a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 196, 109 S.Ct. 998. Plaintiff has not demonstrated that Defendants either individually or in concert, were responsible for the implementation of a policy or custom which caused Plaintiff's injuries or otherwise had any involvement in the matters alleged herein. *See* Fed.R.Civ.P. 12(b)(6). Accordingly, this Court holds that Plaintiff's Complaint has not sufficiently alleged or asserted any constitutional violations on the part of Defendants, no further analysis is needed on the state claim of negligent hiring and supervision by Defendants (*see* doc. 1). *See Reed*, 968 F.Supp. at 1217.

Instead the remedies for such alleged negligence are adequately addressed in state tort law. Plaintiff may have alleged in his Complaint a state law claim for negligence against Defendants, but these facts do not give rise to a constitutional tort under § 1983. *See Gazette*, 41 F.3d at 1065.

We have no occasion to decide here whether a different quantum of evidence might support an action against Defendants in a different context; that is why we must conclude that, in this case, the evidence presented by Plaintiff simply does not amount to a custom of tacit authorization of physical abuse or obvious deliberate indifference in regards to Plaintiff's constitutional rights.

Because we have concluded that the record before us does not support a claim against Defendants upon which Plaintiff is entitled to relief in regards to a "special relationship," a state established policy, custom, or practice or a state-created danger theory, Plaintiff's Complaint should be DISMISSED in relation to his federal claim (*see* doc. 1). Defendants have also moved for the dismissal of Plaintiff's remaining state law tort claim, which alleges that Defendants' negligent supervision of hiring of the staff and principal of the North Fairmount School was the proximate cause of Plaintiff's eye injury (*see* doc. 3).

However, now that this Court has concluded that Defendants are entitled to dismissal pursuant to Rule 12(b)(6) on Plaintiff's federal claim, the Court may decline to exercise jurisdiction over the state law

claim. *See* Title 28 U.S.C. § 1367(c)(3); *see also Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 232–33 (6th Cir.1997); *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1230 (6th Cir.1997). Indeed, " 'if the federal claims are dismissed before trial, ... the state claims [generally] should be dismissed as well.' " *Reed*, 968 F.Supp. at 1226 (quoting *Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992)).

### D. *Plaintiff's Motion to Amend*

Finally, Plaintiff requests in his Response that this Court grant his motion to amend the Complaint in order to add additional Defendants who were members of the teaching or administrative staff of North Fairmount School during the time of the alleged assault by TT upon Plaintiff (doc. 4). Defendants did not oppose Plaintiff's motion in their Reply (*see* doc. 5). Therefore, this Court hereby GRANTS Plaintiff's motion to amend, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

However, for the reasons set forth above and those presented in Defendants' briefs, the Court also finds no merit in regards to the additional Defendants and Plaintiff's proposed assertion of his § 1983 claim against them. Therefore, the need for Plaintiff to submit and file an Amended Complaint under these circumstances is considered by this Court as MOOT.

### CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' Motion to Dismiss as to Count I of the Complaint in regards to the liability of all Defendants under 42 U.S.C. § 1983 (doc. 3). *See* Fed. R.Civ.P. 12(b)(6). Having determined the lack of merit of Plaintiff's federal claims, the Court hereby DISMISSES Count II WITHOUT PREJUDICE so that Plaintiff may pursue resolution of this unresolved claim in state courts if he so desires. Accordingly, the Complaint is hereby DISMISSED (*see* doc. 1), and, therefore, the Court will not issue a Scheduling Order in this matter for the reasons set forth above.

SO ORDERED.